## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, Assistant Administrator of the Funds | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.  17 C 7884 |
| v. | ) ) | Judge |
| EAGLE PAINTING & MAINTENANCE COMPANY, INC., an Illinois corporation, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and Laborers' District Council Retiree Health and Welfare Fund (collectively "Funds"), and Catherine Wenskus, Assistant Administrator of the Funds (hereinafter collectively "Funds"), by their attorneys, Patrick T. Wallace, Jerrod Olszewski, Amy N. Carollo, G. Ryan Liska, Katherine Mosenson, and Kelly Carson Burtzlaff, for their Complaint against Defendant Eagle Painting & Maintenance Company, Inc., an Illinois corporation, state:

## COUNT I

### (Failure To Pay Employee Benefit Contributions as Revealed by an Audit)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4.      Plaintiff Catherine Wenskus is the Assistant Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union").  With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Eagle Painting & Maintenance Company, Inc., an Illinois Corporation, is an Illinois corporation, (hereinafter "Company").  Company does

business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.      The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and Company have been parties to a collective bargaining agreement, which became effective June 1, 2017. ("Agreement"). (A copy of the Agreement between the Union and Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company to Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

7.      The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), Mid-American Regional Bargaining Association ("MARBA") the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LMCC"), Concrete Contractors Association ("CCA") Concrete Contractors Association ("CCA"), the Builders Association ("BAC"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Industry Advancement Fund ("IAF"), and the Laborers' District Council Labor Management Committee Cooperative ("LMCC"), Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those funds.

8.      The Agreement and the Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the

Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

9.      The Agreement and the Funds' respective Agreements and Declarations of Trust require Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance, and further required the Company to maintain and fringe benefit bond. On or about October 23, 2017, the Funds received a Surety bond cancellation notice effective November 27, 2017.

10.      Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company performed covered work during the audit period of October 1, 2012 through October 31, 2016, (a true and accurate copy of the audit is attached hereto as Exhibit B) which revealed that Company has:

(a)      failed to report and pay contributions in the amount of $20,326.12 owed to Plaintiff Laborers' Pension Fund for the audit period of October 1, 2012 through October 31, 2016, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)      failed to report and pay contributions in the amount of $22,524.68

4

owed to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of October 1, 2012 through October 31, 2016, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

    (c)    failed to report and pay contributions in the amount of $41,813.00 owed to Plaintiff Laborers' District Council Retiree Health and Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of October 1, 2012 through October 31, 2016, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

    (d)    failed to report and pay contributions in the amount of $1,003.00 owed to Laborers' Training Fund for the audit period of October 1, 2012 through October 31, 2016, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

    (e)    failed to report and pay contributions in the amount of $278.22 owed to Laborers' District Council Labor Management Committee Cooperative ("LMCC") for the audit period of October 1, 2012 through October 31, 2016, thereby depriving the LMCC of contributions, income and information needed to

administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f)     failed to report and pay contributions in the amount of $160.48 owed to Chicago Area Independent Construction Association ("CAICA") for the audit period of October 1, 2012 through October 31, 2016, thereby depriving the CAICA of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(g)     failed to report and pay contributions in the amount of $140.42 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit period of October 1, 2012 through October 31, 2016, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

11.     Under the terms of the Agreements and the Funds' respective Agreements and Declarations of Trust, Company owes liquidated damages plus interest on all unpaid contributions, and paid late contributions as identified on the audit for the time period of October 1, 2012 through October 31, 2016.

12.     Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company is liable for the costs of any audit which reveals unpaid contributions. Accordingly, Company owes the Funds $1,260.00 in audit costs for the audit for the period of October 1, 2012 through October 31, 2016.

13.     Company's actions in failing to submit payment upon an audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

6

14.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, and the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, audit costs, interest, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Eagle Painting & Maintenance Company, Inc.:

a.      entering judgment in sum certain in favor of the Funds and against Defendant on the amounts due and owing pursuant to the audit for the period of October 1, 2012 through October 31, 2016, including contributions, interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs;

b.      Ordering Defendant to maintain fringe benefit surety bond in accordance with the terms and conditions of the applicable collection bargaining agreement(s); awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure to Pay Union Dues as Revealed by an Audit)

15.     Plaintiffs reallege paragraphs 1 through 14 as though fully set forth herein.

16.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

17.     Notwithstanding the obligations imposed by the Agreement, Company performed covered work during the audit period and Company failed to withhold and/or submit payment of $12,086.96 in union dues that were or should have been withheld from the wages of employees for the audit period of June 1, 2013 through March 31, 2016, thereby depriving the Union of information and income.  See Exhibit B.

18.     Pursuant to the Agreement, Company owes liquidated damages on all late or unpaid dues.  Accordingly, Company owes liquidated damages for the unpaid union dues revealed as due and owing on the audit as well as audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Eagle Painting & Maintenance Company, Inc.:

a.     entering judgment in sum certain in favor of the Funds and against Defendant on the amounts due and owing pursuant to the audit for the period of October 1, 2012 through October 31, 2016, including dues, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

October 31, 2017                                          Laborers' Pension Fund, et al.

                                                                         /s/ G. Ryan Liska

Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540

JUNE 1, 2013 TO MAY 31, 2017

# AGREEMENT

between the

## CHICAGO AREA INDEPENDENT CONSTRUCTION ASSOCIATION

and the

## CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

1



INDEX

| Article | | Page |
|---|---|---|
| | TERM OF CONTRACT | 5 |
| I | EQUAL OPPORTUNITY | 5 |
| II | UNION SECURITY | 6 |
| III | CHECK-OFF & DUES DEDUCTIONS | 6 |
| IV | SUBCONTRACTING | 8 |
| V | WAGES | 9 |
| VI | BONDING | 16 |
| VII | INDUSTRY FUND | 18 |
| VIII | PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS | 19 |
| IX | STEWARDS | 23 |
| X | TRAINING AND APPRENTICE PROGRAM | 25 |
| XI | SETTLEMENT OF DISPUTES | 27 |
| XII | BRANCHES OF WORK | 30 |
| XIII | ALCOHOL AND SUBSTANCE ABUSE | 46 |
| XIV | SUCCESSORS AND ASSIGNS | 46 |
| XV | HOURS AND OVERTIME | 47 |
| XVI | MULTIPLE SHIFTS | 48 |
| XVII | SUNDAYS, HOLIDAYS AND ELECTION DAYS | 49 |
| XVIII | PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS | 50 |

2

XIX      REPORTING FOR WORK . . . . . . . . . . . 53

XX       PAYDAY . . . . . . . . . . . . . . . . . . . . . . . . 54

XXI      WAGES . . . . . . . . . . . . . . . . . . . . . . . . . 55

ROAD BUILDING:

XXII     HOURS AND OVERTIME . . . . . . . . . . . 57

XXIII    HOLIDAYS . . . . . . . . . . . . . . . . . . . . . . 58

XIV      SHIFT WORK . . . . . . . . . . . . . . . . . . . . 58

XXV      PAYDAY . . . . . . . . . . . . . . . . . . . . . . . . 59

XXVI     REPORTING FOR WORK . . . . . . . . . . . 60

XXVII    WAGES . . . . . . . . . . . . . . . . . . . . . . . . . 61

SEWER, TUNNEL AND
RELATED UNDERGROUND:

XXVIII   JOB NOTIFICATION AND PRE-JOB
         CONFERENCE NOTIFICATION  . . . . . . 63

XXIX     WAGES . . . . . . . . . . . . . . . . . . . . . . . . . 64

XXX      WORK HOUR, OVERTIME
         HOLIDAYS AND ELECTION DAYS . . . . 65

XXXI     SHIFT WORK . . . . . . . . . . . . . . . . . . . . 67

XXXII    WORK RULES AND CONDITIONS . . . . 68

KANE, KENDALL, McHENRY AND BOONE:

XXXIII   WORKING CONDITIONS . . . . . . . . . . . 71

XXXIV    WAGES . . . . . . . . . . . . . . . . . . . . . . . . . 71

WILL AND GRUNDY:

XXXV     STEWARDS . . . . . . . . . . . . . . . . . . . . . . 74

3

XXXVI     WAGES . . . . . . . . . . . . . . . . . . . . . . . . . . .  75

XXXVII    FOREMAN AND
          GENERAL FOREMAN. . . . . . . . . . . . . .  78

XXXVIII   SHIFT WORK. . . . . . . . . . . . . . . . . . . .  79

XXXIX     OTHER PAY RATES
          BUILDING CONSTRUCTION AND
          HEAVY AND HIGHWAY . . . . . . . . . . . .  79

<u>LAKE:</u>

  XL      SHIFT WORK. . . . . . . . . . . . . . . . . . . .  82

ADDENDUMS. . . . . . . . . . . . . . . . . . . . . . . . .  85

UNIFORM DRUG/ALCOHOL ABUSE PROGRAM . 85
    CHICAGO LABORERS' DISTRICT COUNCIL
    RETIREE HEALTH AND WELFARE FUND  . . . 90

## TERM OF CONTRACT

This AGREEMENT entered into this 1st day of June, 2013, for Cook, DuPage, Lake, Will, Grundy, Kendall, Kane, McHenry and Boone Counties by and between the CHICAGO AREA INDEPENDENT CONSTRUCTION ASSOCIATION, hereinafter referred to as EMPLOYER, and CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, for and on behalf of its affiliated Local Unions, hereinafter referred to as the UNION, shall remain in full force and effect until 11:59 p.m. on May 31, 2017.

If either party wishes to modify this Agreement, it shall serve written notice by certified or registered mail, upon the other party not less than sixty days prior to May 31, 2017 of its intent to begin negotiations for a new Agreement. In the absence of the service of such notice, this Agreement shall automatically renew itself, together with all amendments and improvements as negotiated after said initial expiration date, by and between the parties in area-wide bargaining, from year to year thereafter.

### Article 1
### EQUAL OPPORTUNITY

The parties agree that Employees will not be discriminated against because of race, creed, religion, color, age, sex or national origin.

The masculine gender has been used in this Agreement to facilitate ease of writing and editing and therefore the masculine gender shall include the feminine gender. Whenever the words "he", "him", "his", or "man" is used, they shall be read and construed as "he or she", "him or her", "his or hers", and "man or woman", respectively.

5

## Article 2
## UNION SECURITY

All new Employees shall be required to join the Union after the expiration of seven (7) days of employment or seven (7) days after the execution date of this Agreement, whichever is later, and shall remain members of the Union in good standing as a condition of continued employment.

Good standing shall mean payment of the initiation fees and both working and non-working dues uniformly required as a condition of acquiring or retaining membership in a Local Union.

Employees covered by this Agreement at the time it is signed, and who are members of the Union at that time, shall be required as a condition of continued employment, to continue membership in the Union for the duration of this Agreement.

Employees covered by this Agreement at the time it has been signed, and who are not members of the Union at that time shall be required to join the Union seven (7) days after the date of execution of this Agreement and remain members of the Union in good standing for the duration of this Agreement.

## Article 3
## CHECK-OFF & DUES DEDUCTIONS

Paragraph 1. Employers also agree to deduct from the net earnings payable to an Employee covered by this Agreement, initiation fees and quarterly Union dues insofar as permitted by state and federal laws upon receipt and in accordance with a duly executed authorization form from the Employee. Said authorization form shall not be revocable for a period of more than one (1) year or prior to the termination date of this Agreement, whichever occurs sooner.

Paragraph 2. All Employers covered by this Agreement shall deduct from the wages of Employees covered

6

by said contract, working dues in the amount of 3.25% of gross wages or such amount approved by the Union for each hour worked and shall remit monthly to the Union office the sums so deducted, together with an accurate list of Employees from whose wages said dues were deducted and the amounts applicable to each Employee, not later than the 10th day of the month next following the month for which such deductions were made. Dues remittance reports shall include a report of the hours worked and wages earned by each Laborer. Employers who fail to timely remit Union dues shall be assessed an additional ten percent (10%) liquidated damages.

Paragraph 3. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written assignments from each Employee on whose account such deductions are made, which assignment shall not be revocable for a period of more than one (1) year, or prior to the termination date of this Agreement, whichever occurs sooner.

Paragraph 4. The Union agrees that it will indemnify and hold harmless the Employer from any and all claims, suits, causes of action, or otherwise, as regards the creation and administration of the dues check-off established by this Article and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees on behalf of the beneficiaries of such indemnity.

Paragraph 5. Should any Employer fail to remit dues to the Union as required under this Agreement, the Employer shall be liable for and pay all costs of collection, including reasonable audit expenses and reasonable attorney fees and costs. The Union may file suit, or remove employees that it represents, or both, for non-remittance or underpayment of dues by an Employer.

Paragraph 6. Laborers' Political League. The Employer will deduct an amount designated by the Union for each hour that an employee receives wages under the

7

terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month for the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue standard.

### Article 4
### SUBCONTRACTING

**Paragraph 1.** On work covered by this Agreement, the contractor or subcontractor agrees to see that all subcontractors on work within the Union's jurisdiction on this job site adhere to the wages and fringes contained in this Agreement when the subcontract is let by the contractor or subcontractor. If, upon the Union's request, the subcontractor chooses to sign a current labor agreement with the Union (although such signing might not be required under Paragraph 1), then the contractor shall be relieved of any liability under this Paragraph 1.

**Paragraph 2.** The Employer agrees that it will not contract or subcontract any work covered by this Agreement to be done at the site of construction, alteration, painting or repair of a building, structure of other work, except to a person, firm or corporation that is party to the applicable collective bargaining agreement with the Union.

**Paragraph 3.** If an Employer, bound to this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the jobsite of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who

8

is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or in addition to any remedies available under this Article, the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund as provided in Article V of this Agreement.

## Article 5
## WAGES

**Paragraph 1.** The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2013 to and including May 31, 2017, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include a total economic increase of $1.90 per hour effective June 1, 2013 to May 31, 2014 to be allocated between wages and fringe benefits by the Union in its sole discretion, which includes the dues deduction; June 1, 2014 to May 31, 2015, $2.00 per hour total economic increase to be allocated between wages and fringe benefits by the Union in its sole discretion; June 1, 2015 to May 31, 2016, $2.05 per hour total economic increase to be allocated between wages and fringe benefits by the Union in its sole discretion; June 1, 2016 to May 31, 2017, $2.10 per hour total economic increase to be allocated between wages and fringe benefits by the Union in its sole discretion. The foregoing allocations may include allocations to LECET and LDC/LMCC.

**Dosimeter Use.** A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

9

**Power Pac.** When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

**Apprentice wages.** Apprentice Laborers shall be paid according to the following schedule:

Apprentices (1st 6 months) . . . . . . . . 60% of base rate:
Apprentices (2nd 6 months) . . . . . . . 70% of base rate:
Apprentices (3rd 6 months) . . . . . . . . 80% of base rate:
Apprentices (4th 6 months) . . . . . . . . 90% of base rate:
Apprentices (after 24 months) . . . . . 100% of base rate:

Should the Union enter into an agreement with the Builders Association of Greater Chicago, the Mason Contractors Association of Greater Chicago, the Illinois Road and Transportation Builders Association, the Underground Contractors Association, the Fox Valley General Contractors Association, the Lake County Contractors' Association, or the Contractors Association of Will and Grundy Counties that provides an annual total economic increase different than the annual total economic increase set forth in this paragraph, then such rates shall be incorporated into the applicable portion(s) of this Agreement that correspond to the trade and geographic scope of such association agreement.

**Paragraph 2. WELFARE:** Beginning the period from June 1, 2013 to May 31, 2014, the Employer agrees to make Health and Welfare contributions of $13.38 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages herein stipulated. This $13.38 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods; June 1, 2014 to May 31, 2015; June 1, 2015 to May 31, 2016; June 1, 2016 to May 31, 2017; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare

10

and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto.

Paragraph 3. PENSION: Beginning June 1, 2013 the Employer agrees to make a pension contribution of $9.52 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages and welfare payments herein stipulated. This $9.52 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods; June 1, 2014 to May 31, 2015; June 1, 2015 to May 31, 2016; June 1, 2016 to May 31, 2017; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The total economic increase shall be allocated between wages and fringe benefits and other funds by the Union in its sole discretion, except that the Union agrees that it shall allocate sufficient funds to the pension fund of the Union from the total economic package increases set forth above in each year of this agreement such that the pension fund remains in green status as defined by the Pension Protection Act of 2006, or any successor legislation.

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

11

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered Employees.

The failure of the Employer to contribute to the said Welfare or Pension Funds when the same is established, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for nonpayment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during this grace period shall be assessed liquidated damages amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees refer the account to legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

12

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement, including the obligation to remit Union Dues under Article 3.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

Paragraph 4. Appointment of Trustees to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund. The parties agree that the Employer-appointed trustees of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund and training and apprentice funds to which Employers are required to contribute shall be appointed solely by Employer associations that enter into collective bargaining agreements with the Union requiring contributions to such funds ("Signatory Associations"). It is further agreed that the Trust Agreements establishing such funds shall be amended to replace any Employer association that appoints a trustee and does not have a labor agreement with the Union, replacing it with a Signatory Association. The union and Signatory Associations shall meet within 30 days of the effective dates of agreements covering a majority of Fund participants to review the appointment of Employer Trustees of the funds. It is agreed that the numbers of hours contributed by Employers represented by Signatory Associations com-

13

pared to contributions by other Signatory Associations during the preceding year shall be the basis for assigning the number of trustee appointments. If such parties are unable to agree on the Signatory Associations to be responsible for appointments and the number of appointments to be made by each Signatory Association the dispute shall be submitted to expedited arbitration under Subpart D of the Policies and Procedures of the Federal Mediation and Conciliation Service.

Paragraph 5. Article III Section 2 of the trust agreements of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund shall be amended to include the following: "Association-appointed Trustees must be full-time employees of Contributing Employers within the Association's membership. A Contributing Employer shall be defined as an Employer that has employed an average of five (5) or more Laborers performing bargaining unit work for whom contributions have been made per month in each of the previous three (3) calendar years."

Paragraph 6. Section 415 Excess Benefit Fund. A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any

14

such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

Paragraph 7. The Employer agrees to be bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Vacation Fund, a jointly-trusteed vacation plan established for the purpose of providing income to members during their winter layoffs. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

Paragraph 8. The Employer agrees to be bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Annuity Fund, a jointly-trusteed defined contribution plan providing a supplemental retirement benefit. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

Paragraph 9. SUPERVISORS: To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 2 and 3 of this Article for this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management Relations Act, as amended; and who at one time were Employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 2 and 3 of this Article.

Paragraph 10. Special Rules for Bonding. An employer that is owned or managed, in whole or part, by an individual who currently has or previously had in the last ten (10) years ownership or principal managerial responsibility for another contributing employer that currently is or ceased doing business when delinquent to the Funds

15

shall be required to post for the benefit of the Funds an additional cash bond or obtain a surety bond from a Fund-approved insurer in an amount equal to twice the amount of the other contributing employer's delinquency. This amount may be adjusted by the Benefit Fund Trustees for each individual employer. This bond shall be in addition to and separate from the bond required elsewhere in this Agreement.

**Paragraph 11. Withdrawal of Employees.** If the Employees are withdrawn from any job in order to collect contributions to the Laborers' Health and Welfare, Pension and/or Apprenticeship and Training Funds, the Employees who are affected by such stoppage of work shall be paid for lost time up to sixteen (16) hours, provided that two (2) days' written notice of intention to remove employees from the job is given to the Employer by the Union. These lost time amounts may be collected only from the contractor with whom the Union has a dispute and the Union shall not pursue collection efforts from any other entity. This lost time liability shall not apply if the Employer has made payment on behalf of the affected employees to another fringe benefit fund under a MARBA labor agreement or a labor agreement of a union affiliated with the Building and Construction Trades Department, AFL-CIO.

Article 6
BONDING

**Paragraph 1.** All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this Agreement. The bond shall be placed in the custody of the Pension and Welfare Funds.

**Paragraph 2.** If the Employer employs between seven (7) and ten (10) Laborers, the surety bond shall be increased to $15,000. If the Employer employs between eleven (11) and twenty (20) Laborers, the surety bond

16

shall be increased to $25,000. If the Employer employers twenty-one (21) to forty (40) Laborers, the surety bond shall be increased to $35,000. If the Employer employs forty-one (41) or more Laborers, the surety bond shall be increased to $45,000.

Paragraph 3. Contractors shall be required to obtain an appropriate bond within thirty (30) days of executing this Agreement, which bond may also be posted in cash. Should the Employer fail to comply with the provisions of Paragraphs 1-3 of this Article, the Union may withdraw its employees or strike until such compliance occurs, and the Employer shall further be liable for all costs, including attorneys fees, incurred in enforcing these provisions.

Paragraph 4. The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;

(b) Termination of business;

(c) Change of name commonly used in business operation;

(d) Change in form of business organization;

(e) Incorporation of business;

(f) Dissolution of corporation;

(g) Name and business organization of successor; and

(h) Admission to or withdrawal from any association operating as a multi-employer bargaining unit.

Paragraph 5. Withdrawal of Employees. If the Employees are withdrawn from any job in order to ensure compliance with the provisions of this Article, the Employees who are affected by such stoppage of work shall be paid for lost time up to sixteen (16) hours, provided that two (2) days' written notice of intention to remove employees from the job is given to the Employer

17

by the Union. These lost time amounts may be collected only from the contractor with whom the Union has a dispute and the Union shall not pursue collection efforts from any other entity. This lost time liability shall not apply if the Employer produces the required bond before expiration of the 2-day notice period.

Article 7
INDUSTRY FUND

**Paragraph 1.** Each Employer shall pay into an industry advancement fund the amount of eight cents ($.08) for each hour worked for the Employer by those of his Employees covered by this Agreement. This payment shall be collected for and remitted only to funds as provided under written agreements between an employer association and the Union.

Each Employer shall pay into the Chicago-Area Laborers-Employers Cooperation and Education Trust ("LECET"), the amount of seven cents ($.07) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

Each Employer shall pay into the Laborers' District Council Labor Management Cooperation Committee ("LDC/LMCC"), the amount of twelve cents ($.12) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

**Paragraph 2.** The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Industry Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of said Industry Fund pursuant to said Agreement and Declaration of Trust and amendments thereto. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the LECET and LDC/LMCC, as well as any amendments thereto.

18

Paragraph 3. Inasmuch as the existence and utilization of this Industry Fund should result in increased construction and, therefore, in increased construction job opportunities for Employees, the Union agrees to cooperate in assuring that the contributions required by this Article are in fact made by Employers bound by this Agreement.

## Article 8
## PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS

Paragraph 1. Except as provided under paragraph 2 below, wages must be paid by payroll check and shall include a stub or statement showing the number of straight time and overtime hours worked and rate of pay. Failure on the part of the Employer to have sufficient funds at the bank to meet pay checks issued workers, shall deprive such Employers henceforth from the right to pay by checks and Joint Grievance Committee shall assess such Employer a sum equal to not less than the expense incurred in the collection of the amounts due because of such insufficient funds to meet checks so issued.

Paragraph 2. Direct Deposit. In lieu of paying wages by payroll check, the Employer may make payment by electronic bank draft if the employee voluntarily accepts such alternate method of payment. The Employer shall not mandate electronic banking as a condition of employment. Electronic wage payments must be transferred to the employee's bank account no later than the employee's regular pay day and at no cost to the employee. If payment is made by electronic bank draft, the Employee must also be provided a record of hours worked, rates of pay, and deductions made, at the same time and containing the same information as if wages were paid by payroll check.

If full wages are not timely transferred to the employee's account, the Employer shall pay the employee an additional four (4) hours pay for each day or portion thereof until full wages are received. Employers who violate the provisions of these paragraphs shall be denied the use of electronic banking for wage payments.

19

Paragraph 3. The Union agrees that the Employees whom it represents will accept and demand the wages and fringe benefit payments set forth in this Agreement, and the employer agrees to pay the wages and fringe benefit payments herein stipulated.

Claims for Shortages: Claims by Employees for shortages must be made within three (3) weeks after shortage is discovered.

Paragraph 4. Payment by the Employer and acceptance by the Employee of less than the wage herein stipulated shall be a violation of this Agreement upon the part of each. Upon conclusive proof to the Joint Grievance Committee of such violation, the Employer shall immediately pay the unpaid balance due in accordance with the wage herein stipulated; and in addition thereto, shall pay the Joint Grievance Committee an amount equal to the penalties provided in the appropriate Article of General Conditions of this Agreement, but under no circumstances shall such penalties be less than fifty (50) percent of the amount of such pay shortage as just and liquidated damages because of such violation.

Upon conclusive proof that the Employer is guilty of paying less than the wages herein stipulated, then nothing in this Agreement shall be construed to take from the Union the right to remove workers it represents from the job, and henceforth to deny such Employer further right to the employment of its members.

Members of the Union who are found guilty of violation of this Agreement shall be dealt with by the Employer.

Paragraph 5. The Union reserves and shall have the right to remove its employees from any job upon the failure of the Employer to pay the wages due any of its Employees or fringe benefits which may be due by reason of the hours of employment.

Paragraph 6. The Employer hereby agrees to maintain proper temporary toilet and drinking facilities accessible to all Employees on the job. The Employer shall fur-

20

nish a suitable place, properly heated when reasonably necessary, where Laborers may eat and change their clothes. The Employer also agrees that it will ice the water at the start of each shift.

Paragraph 7. Where services are performed by Laborers as watchmen, and such Laborers shall not be engaged in the performance of any other branches of work covered by this Agreement, they shall be paid not less than $1.50 below the Building Laborers' rate.

Paragraph 8. HIRING HALL: No agreement on the request of the Union for the establishment of an exclusive Hiring Hall has been consummated. Therefore, the question of establishing a Hiring Hall is hereby reserved for the future consideration of the parties. Upon service of sixty (60) days' notice in writing upon Employer from Union, such question shall be taken up for discussion and further negotiation by the parties hereto.

Paragraph 9. Foremen. There shall be a Laborer appointed as Labor Foreman when five (5) or more Laborers are employed on any one job or project; there shall be sub-foreman after the first ten (10) Laborers, and for each multiple of five (5) Laborers employed thereafter to properly supervise the various phases of the work. A Sub-Foreman shall receive $.45 premium wages above the regular wages paid those Laborers under his supervision, plus established overtime rates. When a Labor Foreman is needed to supervise Laborers such Labor Foreman shall receive $.75 or more premium wages above top labor scale, as mutually agreed between said Labor Foreman and his Employer.

The above and foregoing shall not be so construed as to restrict the Employer's right to pay higher premium wages or appoint a greater percentage of foremen and/or sub-foremen.

Paragraph 10. The Employer shall not engage his labor on a piece-work basis.

Paragraph 11. The Employer shall furnish all tools and shovels required for the work, also boots and rain

21

equipment required for the protection of the workers in the trade and the worker shall be held responsible for them.

**Paragraph 12.** The Employer shall furnish any necessary protective medication, such as petroleum jelly, to prevent burns from creosote or chemicals which may prove injurious to the skin.

**Paragraph 13.** On a job site requiring a Tool Shanty, said Tool Shanty shall be tended by a Laborer if Employer determines tending is required.

**Paragraph 14.** Portable Water Pumps shall be tended by Laborers if Employer determines tending is required.

**Paragraph 15.** In any instance where a Machine replaces only the work of Laborers, said Machine shall be operated by a Laborer if so determined by the Employer.

**Paragraph 16.** The Employer shall furnish a suitable place, properly heated when reasonably necessary, where Laborers may eat and change their clothes.

**Paragraph 17.** The Employer shall not discriminate against any Employee who may be an officer, steward or member of the Union serving on any committee authorized by the Union.

**Paragraph 18. PRE-JOB CONFERENCES.** If the Union elects, a pre-job conference prior to commencement of work shall be held or if need is for additional men after the job has started, then the conference shall be held before the additional hiring commences if the Union elects. At the pre-job conference, the Employer shall advise the Union of its requirements as to workmen required in the respective classifications, the probably starting date, duration of the job, subcontractors, and working schedules.

**Paragraph 19. Out of Town Work.** When Laborers who reside or work in the nine-county geographic area covered by this Agreement are voluntarily requested to work at locations outside these nine counties, the Employer shall continue to report and pay benefits for all

22

hours worked outside the nine counties. If the work per-
formed is covered under a labor agreement with the
Laborers' International Union of North America or its
affiliates, the Employer shall report and pay the benefit
contributions to the fringe benefit fund identified, and the
contribution rates specified, under that labor agreement.
If the work performed is not covered under a labor agree-
ment with the Laborers' International Union of North
America or its affiliates, then the Employer shall report
and pay the benefit contributions to the fringe benefit
funds identified, and the contributions rates specified,
under this Agreement. No employee shall be obligated to
accept out of town employment or he subject to retalia-
tion for refusing such work.

Paragraph 20. Access to Premises. Authorized repre-
sentatives of the Union shall have access to all construc-
tion projects, provided that they first notify the employer
of their arrival, that they do not stop the progress of the
project (except to the extent as may be authorized in this
Agreement), and provided further that such representa-
tives fully comply with the visitor and security rules estab-
lished for the construction project by the general contrac-
tor and the owner. It shall be the duty of the Employer to
provide adequate passes, as requested by the Union, pro-
vided the Employer is able to do so.

Paragraph 21. Key Man. The Employer may utilize
no more than one (1) Laborer at a job site as its key man
who resides outside the geographic area covered by this
Agreement. This limitation shall not apply to any Laborer
who works regularly and continuously within the geo-
graphic area covered by this Agreement. Exceptions can
be made with the parties' mutual agreement in order to
obtain reciprocal arrangements with other jurisdictions.

Article 9
STEWARDS

Paragraph 1. The parties agree that the following
basic principles apply to the selection of a Job Steward:

23

(1) The Union requires that a Steward must fully protect the interest of the Union.

(2) The Employer requires that the Steward be a Laborer who can efficiently perform his duties as a Laborer and will not disrupt the job unnecessarily in discharging his duties as a steward.

(3) To meet the two basic principles agreed to by the parties, it is further agreed:

(a) The Job Steward shall be a working Laborer;

(b) The Steward shall be selected by the Business Manager of the Union with jurisdiction over the job;

(c) In selecting a Steward preference shall be given to Union members presently employed in the bargaining unit of the Employer on the specific site, provided, however, that if, in the judgment of the Business Manager, no presently employed Union member is competent to act as Steward, the Steward shall be selected from outside the bargaining unit. A reason shall be given by the Business Manager why no member is competent. However, the reason shall not infringe upon the right of the Business Representative to select the Steward; and

(d) The Union shall have the right to replace any steward at any time.

Paragraph 2. The Steward shall be subject to the same terms of employment as any other Employee, but taking into consideration that the Steward should be present during all working hours, all possible overtime work shall be assigned to all Stewards, if the Stewards do not replace another Laborer from that other Laborers' previously assigned duties.

Paragraph 3. The duties of the Steward shall include the checking of terms and conditions of work, safety conditions, starting dates of employment for new Laborers, whether Union or Non-Union, and report same to the Business Representative who appointed him. All Laborers employed on a job or project shall report to the Steward

24

any differences or disputes which may arise in connection with the work or any part of it, and the Steward shall report same to the office of the Union. If it becomes necessary to discharge or lay off any Laborers because of completion of the work or otherwise, the Laborer appointed and acting as Steward shall not be discharged or laid off while other Laborers remain employed on the job or project as long as he is competent to perform the work. Nothing herein contained shall in any way restrict the right of any Employer to discharge a Steward for cause, upon notification to the Business Manager of the Local Union who appointed the Laborer to act as Steward.

Paragraph 4. Whenever one or more Laborers are required to work overtime, one of these Laborers shall be the regular designated Steward if he is competent to do the work required or if he cannot work, he will call the Business Manager; and the Business Manager will designate someone on this job to act as Steward.

### Article 10
### TRAINING AND APPRENTICE PROGRAM

Paragraph 1. APPRENTICE COMMITTEE: The Employer hereby adopts and shall be bound by the agreement and declaration of trust established by the Joint Apprenticeship Training Committee ("JATC") for the apprentice program, together with any amendments thereto, which are incorporated by reference herein. The JATC shall have authority to set and enforce penalties for violations of the apprenticeship rules.

Paragraph 2. APPRENTICESHIP AND TRAINING FUND: The Employer shall contribute fifty cents ($.50) per hour for each hour worked from June 1, 2013 to May 31, 2014 for all Employees covered under this Agreement to the Construction and General Laborers' District Council of Chicago and Vicinity Apprenticeship and Training Fund payable to the Training Fund or a designated appointee at the end of each month and such addition-

25

al sums as the Union may designate in its sole discretion from its total economic package on June 1, 2014, June 1, 2015, and June 1, 2016 under this Agreement. The terms of the trust establishing the Fund are incorporated by reference herein and all terms regarding auditing, assessment, non-payments and grace periods as set out in the Collective Bargaining Agreement regarding payment of Welfare and Pension Fund contributions shall apply as if fully set forth herein for the Construction and General Laborers' District Council of Chicago and Vicinity Apprenticeship and Training Fund.

Paragraph 3. The term of apprenticeship shall be 2,400 hours, or two years, whichever occurs later, or such other duration as is mutually agreed by the Training and Apprenticeship Fund trustees. All Health and Welfare, Pension, Training Fund, Industry Advancement and other contributions required under this Agreement will commence immediately upon employment of an apprentice. Union affiliation will be required after seven (7) days of employment.

Paragraph 4. The wages per hour paid to apprentices shall be as follows:

1st six (6) months:  . . 60% of journeyman (base) wages
2nd six (6) months:  . . 70% of journeyman (base) wages
3rd six (6) months:  . . 80% of journeyman (base) wages
4th six (6) months:  . . 90% of journeyman (base) wages
After twenty-four
  (24) months:  . . . . . 100% of journeyman (base) wages

Paragraph 6. The ratio of journeymen to Apprentices shall be six (6) Laborer journeymen to one (1) Laborer apprentice on a company-wide basis, with no more than twenty percent (20%) of Laborers being apprentices on any one job site of the Employer. Employers who employ a maximum of between one (1) and five (5) Laborer journeymen shall be entitled to one (1) Laborer apprentice, who may be assigned to job sites

26

irrespective of the twenty percent (20%) job site maximum specified in this provision.

Paragraph 7. Referral of apprentices will be through the Local Union with jurisdiction over the job site. Employers requesting apprentices will be assigned an apprentice by the JATC from the available apprentice pool. The JATC can limit the number of apprentices to that which is adequate for current needs and which can be properly trained by the program. Employers may recall their laid off apprentices to work, provided that the Employer complies with the ratios set forth in Paragraph 6. All apprentices must report their hours weekly to the JATC. All apprentices will be required to undergo testing by the JATC for the presence of illegal substances at the time they enter the apprentice program.

Paragraph 8. Mandatory Apprenticeship. The Employer shall comply with all requirements of a mandatory apprenticeship program on such terms and at such time as directed by the Joint Apprenticeship Training Committee.

## Article 11
## SETTLEMENT OF DISPUTES

Paragraph 1. Any dispute concerning the interpretation or application of this Agreement between an Employer and the Union shall be adjusted by the particular Employer and Union, in the first instance. Jurisdictional disputes (that is, competing claims for the assignment of work) are not subject to being processed through this grievance procedure.

Paragraph 2. In the event that the matter is not settled, the Union may file a written grievance, which shall be submitted to a Joint Grievance Committee (hereinafter the "JGC") comprised of three (3) Employer representatives selected by the Chicago Area Independent Construction Association and three (3) Union representatives selected by the Construction and General Laborers' District Council of Chicago and Vicinity, which shall convene monthly. The JGC shall adopt its own rules of pro-

27

cedure. The Union must file the grievance within forty-five (45) days of the date of the occurrence giving rise to the grievance or when the affected employee knew or reasonably should have known of the existence of the grievance. Grievances not filed within the forty-five (45) day period are deemed waived and are not subject to being processed through this procedure. The determination of the JGC shall be governed by majority vote, provided that the Employer representatives and Union representatives shall have equal voting power. If decided by majority vote, the grievance determination and any relief determined to be appropriate shall be final and binding upon all parties.

Laborers who prevail in their grievances shall be compensated for two (2) hours lost time to attend the JGC Grievance hearing. Grievances shall be dismissed if the grievant fails to appear at the scheduled hearing and no continuance is granted by the JGC.

Paragraph 3. In the event that the JGC is deadlocked upon the disposition of a grievance, then the Union or the Employer may refer the matter to arbitration by so notifying the other within thirty (30) days of the date of the JGC decision. The moving party shall obtain a list of seven (7) arbitrators from the Federal Mediation and Conciliation Service, provided that all arbitrators maintain their principal office in the Chicago area. The party selected by lot shall strike the first name from the list, then parties shall alternately strike names from the list until one arbitrator remains.

Paragraph 4. The decision of the arbitrator shall be final and binding upon all parties. The arbitrator shall not be empowered to amend, alter or add to this Agreement. The arbitrator's expenses shall be jointly paid by the Employer and the Local Union between whom the grievance exists.

Paragraph 5. Any party who fails to comply with an award within seven (7) days' notice of an arbitrator's award or the JGC determination shall be responsible for

28

an additional ten percent (10%) liquidated damages on any monetary award and all court costs and reasonable attorney fees actually incurred by the party enforcing the award.

Paragraph 6. With regard to this Article, the Union reserves its right, and it shall not be a violation of this Agreement, for the Union to strike, picket and/or withdraw its employees from any Employer who fails to pay wages or fringe benefits as required under this Agreement. Except as provided in this Article, there shall be no strike, slowdown, withdrawal of men or other concerted refusal to work by the Union or the employees during the term of this Agreement. Further, there shall be no lockout by the Employer. The Employer further agrees that no punitive action shall be taken against its employees if said employees refuse to cross a picket line that may be placed on the job or project of their employer.

Paragraph 7. Liquidated Damages. Payment by the Employer and acceptance by the Employee of less than the wage herein stipulated shall be a violation of this Agreement upon the part of each. Upon conclusive proof to the Joint Grievance Committee of such violation, the Employer shall immediately pay the unpaid balance due in accordance with the wage herein stipulated; and in addition thereto, shall pay as directed by the Joint Grievance Committee an amount no less than fifty percent (50%) of the amount of such pay shortage as just and liquidated damages because of such violation. In cases where an employee was knowingly complicit in the underpayment of wages, none of the liquidated damages assessed against the Employer shall be awarded to that employee.

Paragraph 8. Wage Audits. Where the grievance concerns wages that are reflected in a wage audit showing a pattern or practice of wage underpayment, the grievance must be filed within forty-five (45) days after the Union's receipt of the audit. The recovery of any wages shall be limited to the two-year period preceding the grievance filing date (or 3 years if so determined for cause by the Joint Grievance Committee). In cases where an employee was

29

knowingly complicit in the underpayment of wages, that employee shall be limited to receiving unpaid wages from the last 45 days and the additional amounts assessed against the employer shall first be paid to defray the audit costs and thereafter as directed by the Joint Grievance Committee.

### Article 12
### BRANCHES OF WORK

**Paragraph 1. RECOGNITION OF BARGAINING REPRESENTATIVE:** Employer hereby agrees to recognize the Union as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, and also confirms the jurisdiction of this Union over the branches of work covered herein, and agrees not to enter into any agreement with other labor organizations covering such branches of work.

In the event of a jurisdictional dispute over any of the work covered under this Agreement that cannot be adjusted by both parties to this Agreement and the contending party, and if a binding authority recognized by the Union determines the work to be definitely the jurisdiction of some other union, then the parties shall jointly abide by such determination; provided that in the event the decision is appealed by the Union, this provision shall not be applicable until such time as the final decision issues.

**Paragraph 2. BRANCHES OF WORK COVERED HEREIN:** The building of all scaffolding, runways and windbreaks for concrete and mason work, rigging for caissons and concrete chutes and hoppers, digging, lagging, sheeting and dewatering of foundation piers and caissons; concrete work within the walls of any building or jobs; the rubbing and grinding of concrete installations where no patching is involved; boxing for concrete footing, raising, moving, shoring of all buildings, back fillings and gradings; also all laboring work in connection with

30

cement sidewalks, curbs or gutters, stone curbs, streets, alleys, driveways, viaducts, retaining walls, slate, tile and asbestos roofing; also all laboring work connected with composition floor work, rock asphalt, whether done by hand or by any other process, wrecking and stripping of concrete forms and false work, tending to carpenters, tending to salamanders; removal, clearing and cleaning of all debris, signalman and handling of such materials for construction as directed by the Employer; also building in centering for fire proofing; gunite work in handling of cement gun nozzle, when gunite is applied of a thickness of one and one-half (1½) inches or more, all laboring work in connection with original installation of landscaping in connection with new construction of all types, also all laboring work in connection with boiler setting, including the installation of plastic or other non-solid refractory materials. The coverage of this agreement, in referring to the type of work hereunder, includes in addition to all other types of construction, the construction and alteration of all track work and the construction, alteration and maintenance over track work on property on which a railroad company does not have a property right; in short, all unskilled labor connected with work undertaken by members of the Employer and the handling of all materials, or appliances in any trade where it will be more economical to have the work done by Laborers as may be decided by the Employer, subject to appeal to the decision of the Joint Grievance Committee.

Tenders: Tending masons, plasterers, carpenters and other building and construction crafts.

Tending shall consist of preparation of materials and handling and conveying of materials to be used by mechanics or other crafts, whether such preparation is by hand or any other process. After the material has been prepared, tending shall include the supplying and conveying of said material, and all other materials to such mechanic, whether by silo mixer, bucket, hod, wheelbarrow, buggy, or any motorized unit used for such purpose, bobcats, and uniloaders for cement masons and concrete

31

contractors, forklifts for brick masons and/or any other machine which replaces the wheelbarrow or buggy.

Unloading, handling, and distributing of all materials, fixtures, furnishings, furniture, and appliances whether crated or uncrated from point of delivery to stockpiles and from stockpiles to approximate point of installation.

Drying of plaster, concrete, mortar or other aggregate when done by salamander heat or any other drying process.

Cleaning and clearing of all debris, including recycled material, wire brushing of windows, scraping of floors, removal of surplus material from all fixtures within confines of structures and clearing of all debris in building and construction area. The general cleanup, including sweeping, cleaning, washdown and wiping of construction facility, equipment and furnishings and removal and loading or burning of all debris including crates, boxes, packagings, and packaging waste materials. Washing or cleaning of walls, partitions, ceilings, windows, bathrooms, kitchens, laboratory, and all fixtures and facilities therein. Cleanup, mopping, washing, waxing and polishing or dusting of all floors or areas.

Washing or cleaning of walls, partitions, ceilings, windows, bathrooms, kitchens, laboratory, and all fixtures and facilities therein. Decontamination, cleanup, mopping, washing, waxing and polishing or dusting of all floors or areas. The cleanup and decontamination from the deposit of blood, pathogens, radiation, particles or other hazardous waste.

The aging and curing of concrete, mortar and other materials applied to walls, floors, ceilings and foundations of buildings and structures, highways, airports, overpasses, tunnels, bridges, approaches, viaducts, ramps, or other similar surfaces by any mode or method.

Fire Stopping, fireproofing beams, ceilings, walls and floors with all forms of fire prevention materials.

32

All fire watch, hole watch, and confined space entry watch for the above-mentioned craft. All fire watch attendants when multi-craft personnel are used, and all general area firewatch. Attendants for all confined space entry when multi-craft personnel are used. All attendants for foreign material exclusion when single or multi-craft are used.

Safety and deck monitoring.

**Scaffolds:** Erection, planking, maintenance and removal of all scaffolds and windbreaks for lathers, plasterers, bricklayers, masons and other construction trade crafts. Building planking or installation and removal of all staging, swinging, tubular and hanging scaffolds, including maintenance thereof.

**Excavations and Foundation-Site Preparation and Clearance For Transportation and Transmission Lines:** Construction of sewers, shafts, tunnels, subways, caissons, cofferdams, dikes, dams, aqueducts, culverts, flood controls, airports, laying underground steel pipe, transite, clay, concrete, fiber, and plastic, including telephone, telegraph, television and other similar underground duct.

Excavation for building and all other construction; digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing, bracing and propping of foundations, holes, caissons, cofferdams, dams, dikes and irrigation trenches, canals and all handling, filling and placing of sand bags connected therewith. All drilling, blasting and scaling on the site or along the right of way, as well as access roads, reservoirs, including areas adjacent or pertinent to construction site; installation of temporary lines.

Preparation and compacting of roadbeds for railroad track laying, highway construction and the preparation of trenches, footings, etc., for cross-country transmission by pipelines or electric transmission or underground lines or cables.

33

On-site preparation and right-of-way clearance for construction of any structures or the installation of traffic and transportation facilities such as highways, pipelines, electrical transmission lines, dam sites and reservoir areas, access roads, etc. The setting up, alignment and operating of the laser beam shall be the work of the laborers. The setting up and operation of any other similar type beam shall be the work of the laborers. The Union and the Employers agree to comply with any and all state laws governing operation of such laser-type equipment. All GPS equipment, lasers, and grade checking. Clearing and slashing of brush or trees by hand or with mechanical cutting methods. Blasting for all purposes such as stumps, rocks, general demolition. Falling, bucking, yarding, loading or burning of all trees or timber on construction areas. Choker setters, off-bearers, lumber handlers and all Laborers connected with on-site portable sawmill operations connected with clearing. Erection, dismantling and/or reinstallation of all fences. Cleanup of right-of-way, including tying on, signaling, stacking of brush, trees or other debris, and burning where required. All soil tests, operations of semi and unskilled labor, such as filing of sand bags, handling timber and loading and unloading of same.

Concrete, Bituminous Concrete and Aggregates: (a) Concrete, bituminous, concrete or aggregate for walls, footings, foundations, floors or for any other construction. Mixing, handling, conveying, pouring, vibrating, guniting and otherwise placing concrete or aggregate, whether done by hand or any other process. Wrecking, stripping, dismantling and handling concrete forms and false work. Building of centers for fire proofing purposes. Operation of motorized wheelbarrows or buggies or machines of similar character, whether run by gas, diesel or electric power. When concrete or aggregates are conveyed by crane or derrick, or similar methods, the hooking on, signaling, dumping and unhooking the bucket. Placing of concrete or aggregates, whether poured, pumped, gunited, or placed by any other process. The assembly, uncoupling of all connections and/or parts of,

34

to equipment used in mixing or conveying concrete, aggregate, or mortar, and the cleaning of such equipment, parts and/or connections. All vibrating, grinding, spreading, flowing, rodding, leveling and strike-off of concrete or aggregates by floating, puddling or screening by hand or mechanical means prior to finishing. Where prestressed or pre-cast concrete slabs, walls, or sections are used, all loading, unloading, stockpiling, hooking on, signaling, unhooking, setting and barring into place of such slabs, walls or sections. All mixing, handling, conveying, placing and spreading of grout for any purpose. Green cutting of concrete or aggregate in any form, by hand, mechanical means, grindstones or air or water.

(b) The filling and patching of voids, crevices, etc., to correct defects in concrete caused by leakage, bulging, sagging, etc.

(c) The loading, unloading, carrying, distributing and handling of all rods, mesh and material for use in reinforcing concrete construction. The hoisting of rods, mesh and other material for use in reinforcing concrete construction. The hoisting of rods, mesh and other materials except when a derrick or outrigger by other than hand power is used.

(d) All work on interior concrete columns, foundations or engine and machinery beds.

(e) The stripping of forms, other than panel forms which are to be re-used in their original form, and the stripping of forms on all flat arch work.

The moving, cleaning, oiling and carrying of all forms to the next point of erection.

The snapping of wall ties and removal of tie rods. Handling, placing and operation of the hoses and pots or hoppers on sand blasting or other abrasive cleaning. The jacking of slip forms, and all semi and unskilled work connected therewith.

Streets, Ways and Bridges: Work, in the excavation, preparation, concreting, asphalt, bituminous concrete

35

and mastic paving, ramming, curbing, flagging and surfacing of streets, striping, street markings and other pavement markings, Laborers engaged in layout work, cleanup and helping painters involved in any pavement markings, ways, courts, underpasses, overpasses, bridges, approaches and slope walls and the grading and landscaping thereof and all other labor connected therewith. Cleaning, grading, fence or guard rail installation and/or removal for streets, highways, roadways, aprons, runways, sidewalks, parking areas, airports, approaches and other similar installations. Preparation, construction and maintenance of roadbeds and sub-grade for all paving, including excavation, dumping and spreading of sub-grade material, ramming, or otherwise compacting. Setting, leveling and securing or bracing of metal or other road forms and expansion joints, including placing of reinforcing mats, or wire mesh, for the above work. Loading, unloading, placing, handling and spreading of concrete aggregate or paving material, including leveling of the surface. Strike-off of concrete, when used as paving material by hand and floating or mechanical screening for strike-off. Cutting of concrete for expansion joints and other purposes. Setting of curb forms and the mixing, pouring, cutting, flowing, and strike-off of concrete used therefor. The setting, leveling and grouting of all pre-cast concrete or stone curb sections. Installation of all joints, removal of forms and cleaning, stacking, loading, oiling and handling. Grading and landscaping in connection with paving work. All work in connection with loading, unloading, handling, signaling, slinging and setting of all paving blocks, riprap or retaining walls such as stone, wood, metal, concrete or other material and the preparation of surfaces to receive same.

Concrete Coring, Testing and Quality Control. All work in connection with quality assurance/quality control and the collection and testing of construction materials, including asphalt, and soil samples for the purposes of quality control/quality assurance. (Concrete Coring, Testing and Quality Control shall not be subject to subcontracting restrictions in Article 4.)

36

**Trenches, Manholes, Handling and Distribution of Pipe, Etc.:** Cutting of streets and ways for laying of pipe, cables or conduits for all purposes; digging of trenches, manholes, etc., handling and conveying all materials; concreting, back-filling, grading and resurfacing and all other labor connected therewith. Clearing and site preparation as described herein. Cutting or jackhammering of streets, roads, sidewalks or aprons by hand or the use of air or other tools. Digging of trenches, ditches and manholes and the leveling, grading and other preparation prior to laying pipe or conduit for any purpose. Loading, unloading, sorting, stockpiling, wrapping, coating, treating, handling and distribution of water mains, gas mains, and all pipe, including placing, setting and removal of skids. Cribbing, driving or sheet piling, lagging and shoring of all ditches, trenches and manholes. Handling, mixing or pouring concrete and handling and placing of other materials for saddles, beds or foundations for the protection of pipes, wires, conduits, etc. Backfilling and compacting of all ditches, resurfacing of roads, streets, etc. and/or restoration of lawns and landscaping.

**Shafts and Tunnels, Subways and Sewers:** Construction of sewers, shafts, tunnels, subways, caissons, cofferdams, dikes, dams, levies, aqueducts, culverts, flood control projects and airports. All underground work involved in mines, underground chambers for storage or other purposes, tunnels or shafts for any purpose, whether in free or compressed air. Drilling and blasting, mucking and removal of material from the tunnels or shafts. The cutting, drilling and installation of material used for timbering, or retimbering, lagging, bracing, propping or shoring the tunnel or shaft. Assembly and installation of multiplate, liner plate, rings, mesh, mats or forms for any tunnel or shaft including the setting or rods for same. Pouring, pumps-creting or guniting of concrete in any tunnel or shaft operation, manual or hydraulic jacking of shields and the use of such other mechanical equipment as may be necessary.

37

Excavation or digging and grading of footings and foundations for bridges, overpasses, underpasses, aqueducts, etc., and their approaches. All concrete work as described above and in addition, the hooking on, signaling and dumping of concrete for treme work over water on caissons, pilings, abutments, etc. Excavation, grading, grade preparation and landscaping of approaches. Installation of pipe, gratings and grill work for drains or other purposes. Installation of well points or any other dewatering system.

Compressed Air: In compressed air all work underground or in compressed chambers, including tending of the outer air lock. All work in compressed air construction including, but not limited to, groutmen, trackmen, blasters, shield drivers, miners, brakemen, miner's helpers, lock tenders, mucking machine operators, mortar men, gauge tenders, rodmen, compressed air electricians, setting of line plate and ring sets, drill runners, powermen or blasters, air hoist operators; form men; concrete blower operators, cement (invert) operators, power knife operators, erector operators, keyboard operators, pebble placer operators, car pushers, grout machine operators, steel setters, cage tenders, skinner track layers, dumpmen, diamond drillers, timbermen and re-timbermen, cherry pickmen, nippers, chucktenders and cable tenders, vibratormen, jetgunmen, gunite, nozzlemen, gunmen, reboundmen and all other work connected therewith.

Sewer, Drains, Culverts and Multiplate: Unloading, sorting, stockpiling, wrapping, coating, treating, handling, distribution and lowering or raising of all pipe or multiplate. All digging, driving of sheet piling, lagging, bracing, shoring and cribbing, breaking of concrete, backfilling, tamping, resurfacing and paving of all ditches in preparation for the laying of pipe. Pipe laying, leveling, and making of the joint of any pipe used for main or side sewers and storm sewers. All of the laying of clay, terra cotta, iron-stone, vitrified concrete or other pipe and the making of joints for main or side sewers and storm sewers and all pipe for drainage. Unloading, handling, distribu-

38

tion, assembly in place, bolting and lining up of sectional metal or other pipe including corrugated pipe. Laying of lateral sewer pipe from main sewer or side sewer to building or structure, except that Employer may direct that this work be done under proper supervision. Laying, leveling and making of the joint of all multi-cell conduit or multi-purpose pipe. Cutting of holes in walls, fittings, piers or other obstructions for the passage of pipe or conduit for any purpose and the pouring of concrete to secure said holes. Digging under streets, roadways, aprons or other paved surfaces for the passage of pipe, by hand, earth auger or any other method and manual and hydraulic jacking of pipe under said surfaces. Installation of septic tanks, cesspools and drain fields.

Underpinning, Lagging, Bracing, Propping and Shoring. Underpinning, lagging, bracing, propping and shoring, raising and moving of all structures; raising of structure by manual or hydraulic jacks or other methods. All work on house moving, shoring and underpinning of structures, loading, signaling, right- of-way clearing along the route of movement. Resetting of structure in new location to include all site clearing, excavation for foundation and concrete work. Cleanup and backfilling, landscaping old and new site.

Drilling and Blasting. All work of drilling jackhammering and blasting. Operation of all rock and concrete drills, including handling, carrying laying out of hoses, steel handling, installation of all temporary lines and handling and laying of all blasting mats. All work in connection with blasting, handling and storage of explosives carrying to point of blasting, loading holes, setting fuses, making primers and exploding charges. All securing of surfaces with wire mesh and any other material and setting of necessary bolts and rods and anchor same. All high scaling and other rock breaking and removal after blast. Handling and laying of nets and other safety devices and signaling, flagging, road guarding.

Stringline and Pegs on Slip Form Machines: It shall be the work of the laborers to set all lines, and leveling for

39

slip form machines (such as the Miller Formless, Curb Master of Iowa, Go-Mo-Co., and other similar slip form machines). It also shall be the work of the laborers to set the plastic line for the C.M.I. Auto Grader, asphalt machines, and other similar graders. The cleaning of the Auto Graders and slip form machines will be the work of the laborers.

Underground work. (a) The digging and excavation for all sewers, catch basins, manholes, test holes, shafts and subways; the excavation for bridges and viaduct abutments; the excavation or the digging of trenches for, and the laying of, drain pipes, concrete pipes, water pipe extensions, water main taps, water main fusing, water mains from whatever source and beyond the first point of connection from building, conduits in which wire or cables are carried or run, all underground pipe transportation lines for gas, oil, gasoline, fluids and liquids, water aqueducts, and water lines and utilities, including temporary, of every description, including excavations or digging to uncover such utilities, drain pipes, concrete pipes, water pipes, water mains, sewer pipes, conduits and gas pipe lines for the purpose of relocation, removal, repair or alterations of such pipes, conduits or pipe lines, and all temporary piping of every description in connection with excavating and underground construction; the handling, placing and bracing in position of all sheeting forms and steel reinforcing, including the driving thereof, and the welding and burning of same, putting on grout mortar on bottom of sewers about pumping stations, including the erection, alteration and remodeling of same; all common labor performed in connection with the erection, alteration, remodeling, or demolition of bridges and viaducts, all installations of repairs to and removal of temporary ventilation pipes or water lines in underground work, sewer work or tunnels; the laying and connecting of all non-metallic and metallic pipes; the rodding of all sewer, drain and conduit pipes or systems; and all common labor performed on or about, or in connection with the mixing or handling of materials on any of the work above set forth.

40

(b) All work performed in free or compressed air in shafts and tunnels for piping, sewers, water, subways (mass transportation systems of all kinds), transporting, diversion, storage, shelters, aquifers and all other types of reservoirs, related to water pollution projects, and all other types of reservoirs, caissons, cofferdams, dikes, dams, levees, culverts, flood control projects, pilings, soil test borings, ground water well test holes, seismograph testing of subsurface, geology, excavation for subsurface installations of industrial, manufacturing, commercial, military, federal, state, county and municipal governmental facilities of every type and description, missile and anti-missile silo shafts, and underground construction for the preparation of the installation of atomic smashing accelerations and appurtenances; and all other underground structures of every type, nature and description in free or compressed air.

(c) The work covered by this Agreement shall be classified as follows: All preparatory work, including the excavating, bracing, drilling and blasting (handling of all powder, including splitting and making of primers), mucking and removal or material from the tunnels and shafts; the cutting, drilling and installations of materials used for timbering or re-timbering, lagging bracing, propping or shoring the shaft or tunnel, and all welding incidental thereto; assembly and installation of multiplate, liner plate, rings, mesh, mats or forms for any tunnel or shaft, including the setting of rods for same; pouring, pumpcreting and guniting of concrete in any tunnel or shaft; the operation, manual or hydraulic jacking of shields and the use of such other mechanical equipment as may be necessary; all concrete work described as above, and in addition thereto, the hooking on, signaling and dumping of concrete for work over on caissons, pilings, abutments, etc.; the installation of pipe, gratings and grill work for drains or other subsurface purposes; the installation of well points or any other dewatering systems; and also all alterations, maintenance and demolition work on all underground projects; and all other work covered by classifications hereinafter enumerated in herein.

41

(d) Compressed Air: In compressed air, all work underground or in compression chambers, including tending of the outer air lock, shall be covered by this agreement; all construction work in compressed air including, but not limited to, grout men, track men, drillers, shield drivers, miners, lock tenders, muckers, and mucking machine, motor men, rod men, laser beams, compressed air electricians, liner plate setters, ring setters, dynamite men or blasters, air hoist, form men, concrete blower, concrete laborers, power knives, erectors, key boards, agitator car, car pushers, grout machines, steel setters, cage tenders, skinners, track layers, dump men, timber men or bracers, cherry pick men, nippers, chuck tenders and cable tenders, vibrator men, jet gunmen, gunmen, gunite nozzle men, and all other types of work connected therewith shall be covered by this Agreement.

### PERIOD AND INTERVALS OF WORK
### FOR EACH TWENTY-FOUR HOUR PERIOD

| Pressure | | Periods | Compression and Decompression |
|---|---|---|---|
| More than minimum number of pounds | Not more than maximum number of pounds | Maximum total hours | See Current OSHA Regulations |
| Column 1 | Column 2 | Column 3 | |
| Normal | 15 | 8 | |
| 16 | 26 | 6 | |
| 27 | 33 | 4 | |
| 34 | 38 | 3 | |
| 39 | 43 | 2 | |
| 44 | | 1 | |

The Employer may determine the time of each period when the pressure is not more than fifteen pounds per square inch, provided that the total for the periods does not exceed eight hours and does not conflict with OSHA regulations. The limits or hours as specified in said table shall apply accordingly to the maximum pressure attained at any time during the period.

42

(e) Inspection, Maintenance and Repair of Underground Utilities, and Sewers. All underground and preparatory work, which includes televised inspections, telegrouting, root cutting, herbicide application, lining, vacuuming, vacuum excavation, and jetting, in new or existing utilities, water mains, structures, shafts, tunnels, sewers, drains, pipes and related structures of every character and description; all work performed on the ground when excavating with a vac-truck.

Signalmen: Signalmen on all construction work defined herein, including traffic control signalmen at construction site.

General Excavation and Grading: The clearing, excavating, filling, backfilling, grading and landscaping of all sites for all purposes and all labor connected therewith, including chairmen, rodmen, grade markers, etc.

Factories: All work in factories, mills, power stations, oil refineries, chemical plants, and industrial plants performed now or as may be acquired hereafter, including packers, cutters, loaders, raw material unloaders, checkers, stuffers, production line personnel and stenciling of materials. Handling of raw pigment; vessel cleaners and/or dryers; washing or cleaning laboratory glassware; stocking of materials in laboratories; the cleaning and/or scrubbing, washing, polishing of all floors, glasses, windows, walls, rest rooms and furniture. The erection, set-up, and dismantlement of all step off pads in contaminated work areas. The shielding of all radioactive services. The decontamination of all radioactively contaminated tools, materials, equipment, and work areas.

General: Material yards, junk yards, asphalt plants, concrete products plants, cemeteries, landscape nurseries and the cleaning or reconditioning of streets, ways, sewers and water lines and all maintenance work and work of an unskilled and semi-skilled nature, including Laborers in shipyards, tank cleaners, ship scalers, shipwright helpers, watchmen, flagmen, guards, security and safety men, toolroom men, park, sports area and all recreational

43

center employees, utilities employees, horticultural and agricultural workers, garbage and debris handlers and cleaner.

Pits, Yards, Quarries, Etc.: All drillers, blasters and/or powdermen, nippers, signalmen, laborers in quarries, crushed stone yards and gravel and sand pits and other similar plants, including temporary and portable batching plants.

Wrecking: The wrecking or dismantling of buildings and all structures, breaking away roof materials, beams of all kinds, with use of cutting or other wrecking tools as necessary. Burning or otherwise cutting all steel structural beams. Breaking away, cleaning and removal of all masonry and wood or metal fixtures for salvage or scrap. All hooking on and signaling when materials for salvage or scrap are removed by crane or derrick. All loading and unloading of materials carried away from the site of wrecking. All work in salvage or junk yards in connection with cutting, cleaning, storing, stockpiling or handling of materials. All clean-up removal of debris, burning, backfilling and landscaping of the site of wrecked structures.

Railroad Track Work. Right-of-way clearance as described above, excavation, grading, subgrading, ballasting and compacting of right-of-way. Loading, unloading, stockpiling, handling and distribution of track and ties and placing of or jacking track and ties at point of installation. All burning or otherwise cutting of track. Setting of tie plates, bolting, leveling, and gauging of rails and all spiking, whether by hand or mechanical means. Placing and tamping of ballast by hand or mechanical means. Construction and/or relocation of main line, shoe flies, sidings, gradings, crossings, relocating of pipes and drainage and culverts and connected with same and removal and replacing of all fences.

Studio Utility Employees: All such work as herein described as may be pertinent to and part of the operation of Motion Picture and other related type of studios.

44

Use of Tools: Operation of all hand, pneumatic, electrical, motor, combustion or air-driven tools or equipment necessary for the performance of work described herein. In short, all unskilled labor connected with work undertaken by members of the party of the first part, and the handling of all materials or appliances in any trade where it will be more economical to have the work performed by Laborers as may be decided by the Employer, subject to appeal to and decision of the Joint Grievance Committee.

Miscellaneous: All such work and jurisdiction as may have been acquired by reason of amalgamation or merger with former national or international Unions and as may be hereafter acquired; including all such work and jurisdiction as declared by actions of the Executive Council or conventions of the American Federation of Labor.

Paragraph 5. WORK NOT INCLUDED: The laboring work not included in this Agreement is general excavating for buildings to the bottom of floor level. If there are any sub-basements or cellars, this general excavation shall be considered to extend to the bottom of the floor, of same. Excavation in basement and sub-basements other than by power equipment shall be done by Laborers at Building Laborers' rate (except where caisson rates apply).

Paragraph 6. WRECKING: Where a building is only partially wrecked and parts torn down for the purpose of building additions, alterations, remodeling, or repairing same, such work is covered by this Agreement, and rates as established herein shall apply.

Paragraph 6(a). WRECKING: COMPLETE DEMOLITION: Work pertaining to wrecking of buildings and structures in their entirety and removed to the basement floor level is covered by the Agreement between Local No. 225 of the Laborers' District Council and the Labor Committee representing the Wrecking Industry of Chicago and Vicinity, and the rates established by said Agreement shall apply.

45

Paragraph 7. FLYING FORMS: Laborers shall tend the Carpenters when prefabricating the Flying Forms on the ground.

When Flying Forms are used on each floor, Laborers shall assist in the placing of Steel Tubular Scaffolding and Flying Forms.

When Concrete Floors are poured and Flying Forms are removed, Laborers will assist.

Laborers will clean and oil Flying Forms after each concrete pour.

After the last concrete pour, when Flying Forms will not be re-used on job site, Laborers will remove, clean and dismantle, oil and place in a stockpile.

### Article 13
### ALCOHOL AND SUBSTANCE ABUSE

The parties incorporate the CISCO Uniform Drug/-Alcohol Abuse Program, as modified, attached hereto as Addendum.

It is recognized that some client owners require additional substance abuse procedures to be followed on their projects for all trades, and it shall not be a violation of this agreement for signatory employers to comply with such procedures, provided prior written notification is given to the District Council.

### Article 14
### SUCCESSORS AND ASSIGNS

In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

46

## WORKING CONDITIONS APPLICABLE
## TO BUILDING CONSTRUCTION

The following additional rules and conditions shall apply to work performed at the building or site, in connection with masonry, carpentry and such other work to be done at the building or site.

### Article 15
### HOURS AND OVERTIME

Paragraph 1. When one shift is used, eight (8) hours per day, between 7:00 a.m. and 3:30 p.m. from Monday through Friday, shall constitute the normal work day and straight time shall be paid. In weeks that have designated holidays that fall during the regular work week, but not more often than six (6) times per year, the Employer may schedule four (4) consecutive ten (10) hour work days at straight time. The Union and the Employees must be informed and the Union must give permission to the Employer in writing.

Paragraph 2. Starting times may be adjusted by the Employer, upon notice to and clearance by the Union, from 6:00 a.m. to 9:00 a.m. at straight time.

Paragraph 3. At the option of the Employer, the starting time for the day, or the first shift can be flexible.

It is the Employer's responsibility to inform the Employee and obtain clearance from the Union of any change in starting time prior to quitting time the day before such change is to be effective. On Monday through Friday, time and one half will be paid for the four (4) hours immediately following the normal 8-hour work day, and double time thereafter.

Paragraph 4. When one night shift is used to perform emergency work which cannot be done during the normal work day, such work shall be paid for at time and one-half for the first eight (8) hours, and double time thereafter.

47

Paragraph 5. Overtime rates on single shift work starting at 8:00 a.m. Saturday, shall be time and one-half for the first ten (10) hours, and thereafter double time shall be paid until 8:00 a.m. Monday, unless changed by Paragraph 2 above. During the period between December 1 and March 15, Saturday may be used as make-up day at straight time while tending masons whose Local Unions observe similar conditions; provided, however, that after forty (40) hours have been worked, time and one-half will be paid.

## Article 16
## MULTIPLE SHIFTS

Paragraph 1. When it is necessary that the contractor use more than one shift for a period of three (3) or more consecutive days, the Union shall be notified twenty-four (24) hours in advance of the effective date of the starting of such multiple shift operations.

Paragraph 2. On Multiple Shift arrangements, the work week shall start at 12 o'clock midnight Sunday, and continue until 11:59 p.m. Friday. In no event shall regular working hours of different shifts overlap.

Paragraph 3. When three (3) eight (8) hour shifts are used, the workmen shall receive eight (8) hours' pay for seven and one-half (7½) hours worked; one-half hour being allowed for eating. Employees shall receive eight (8) hours pay under this Section even if they are permitted to leave after seven and one-half (7½) hours, and it shall be a violation of this Agreement if an employee does not receive eight (8) hours pay. Employees who work eight (8) hours on a shift without receiving one-half hour lunch shall receive, in addition to the eight (8) hours pay as provided in this Section, one (1) hour's pay at the applicable premium rate.

Paragraph 4. When two (2) twelve (12) hour shifts are used, an eating period of one-half hour shall be allowed each shift without deductions in pay and all time in excess of eight (8) hours shall be paid at the regular overtime

48

rates, that is to say, and two and one-half (2½) hours immediately following the first eight (8) hours shall be paid for at the rate of time and one-half, and double time thereafter. Employees who work one of two twelve (12) hour shifts without receiving a one-half hour lunch shall receive, in addition to the twelve (12) hours pay as provided in this Section, one-half hour's pay at the applicable premium rate.

Paragraph 5. When two eight (8) hour or two ten (10) hour shifts are used, an eating period of one-half (½) hour shall be allowed, but not paid for.

Paragraph 6. On Saturday, other than single time shift, shift work shall start at 12:01 a.m. and the first eight (8) hours of each shift shall be paid for at the rate of time and one-half, and thereafter double time shall be paid; however, under no conditions shall more than eight (8) hours be worked at the rate of time and one-half on any one shift.

## Article 17
## SUNDAYS, HOLIDAYS AND ELECTION DAYS

Paragraphs 1. All work performed on Sundays or on the following holidays: New Year's day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day, or on Mondays when such holidays are celebrated, shall be paid for at the double time rate. There shall be no work performed on Labor Day, excepting in case of dire emergency, and with the written consent of the President of the District Council. If a holiday falls on a Sunday, it shall be celebrated on the following Monday. If a holiday falls on a day other than Sunday, it shall be celebrated on that date.

Paragraph 2. On Election Days, the individual employed in this trade shall be allowed time not to exceed two (2) hours, without pay, for the purpose of voting, provided that the worker on the job has given notice to the Employer or his agent and has made arrangements no

49

less than twenty-four (24) hours in advance, to receive such time off.

Paragraph 3. When a holiday falls on Monday through Friday, make-up days on Saturday shall be paid at time and one-half for the first ten (10) hours and double time thereafter.

Paragraph 4. In weeks that have designated holidays that fall during the regular workweek, but not more often than six (6) times per year, the Employer may schedule four (4) consecutive ten (10) hour days at straight time. The Union and the Employees must be informed and the Union must give permission to the Employer in writing.

### Article 18
### PARTICULAR WORK RULES AND
### CLARIFICATION OF CONDITIONS

Paragraph 1. (a) Building Laborers' scale shall apply to all work performed by the Laborers except as specifically classified.

(b) Boiler Setter Laborers will include all work of handling solid refractory materials and also fire brick work in boiler setting, open hearth, furnace, blast furnace, soaking pits, tanks, dust catchers, coke oven batteries, furnace chimneys and stacks, including cleanup work on the above services.

(c) Boiler Setter Plastic Laborers applies to work of actually installing plastic, in connection with the boiler work or other non-solid refractory materials. Mortar mixers, lancers, burners, etc., plus all work from point of forty (40) feet above normal ground level in fire brick work and Boiler Setters Laborers' Classifications.

Minimum safety measures for Boiler Setters are that all scaffolding, in and around blast furnaces and hot stoves, etc., shall not exceed five (5) feet per landing and be constructed of solid-type materials, except the large cable-type used in blast furnaces, and at least every fourth scaffold shall be left in place to serve as a safety scaffold

50

with ladders extending to safe distance above each landing. The Employer shall furnish respirators, safety goggles, gloves and other protection materials necessary in and about dusty and hot working conditions during all furnace work.

(d) Caisson Diggers applies to all caisson work and men working in trenches, foundation pits and piers eight (8) feet or more in depth below the level that excavation begins in such trenches, foundation pits or piers.

Where hazardous conditions exist when excavating trenches, foundation pits or piers or where a type of soil, sand or other material being removed creates a hazardous condition for the Employee such trenches, foundation pits or piers must be shored or sheathed, and the Employees performing the work of shoring and sheathing shall be paid the caisson rate.

Where hazardous conditions do not exist, but sheathing or shoring is necessary solely for the purpose of protecting a bank or preserving the work, then caisson rates shall not apply.

When specifications show the depth of such excavation to exceed eight (8) feet, said caisson rate shall apply from the start of excavation when hand dug. For safety reasons, no worker shall be permitted to work alone if excavation exceeds five (5) feet, unless he is working under direct supervision.

(e) Chimney Laborers (over forty (40) feet) applies to all freestanding chimneys in excess of forty (40) feet above the ground level. The Chimney Laborers' rate shall apply for the entire height of the chimney, both erecting or wrecking such chimney.

Free-standing chimneys shall be construed as chimneys built from the ground up, outside the building, for industrial, commercial or institutional purposes. It is understood that this provision does not apply in the erection of ordinary chimneys for apartment buildings, etc., unless the chimneys go forty (40) feet above the roof level.

51

(f) Jackhammermen: The rate for Jackhammermen herein established shall apply to any mechanically operated tool over thirty-five (35) pounds in weight, used in demolition, concrete breaking, tamping or other similar work. The regular building Laborers' rate shall apply to all lighter mechanical tools.

(g) Scaffold Laborers: Applies to all Laborers engaged in installing, relocating and/or removing all swinging, tubular and other types of scaffolds designed and used for tending to or servicing our allied trades. The raising and lowering of swinging and specifically designed scaffolds by hand, by power, or by any other process, is not included in scaffold Laborers' rates.

(h) Stone Derrickmen and Handlers: Applies to all Laborers engaged in helping the stone setters set and distribute dimensional cut stone, terra cotta, granite or prefabricated materials replacing or substituted for cut stone, etc.

(i) Windlass and Capstan Persons: Applies to all hoisting units attached to mixers or movable equipment used to raise material where regular hoists cannot be erected or used.

(j) Fireproofing and Fire Shop Laborers: applies to Fireproofing beams, ceilings and walls, etc., in connection with gunite work or any other process, including clean-up work on job site, shops or yards.

(k) Cement Gun Nozzle Laborers: (Gunite) Applies to Laborers handling nozzle in application of gunite.

(l) Cement Gun Laborers: Applies to Laborers handling cement gun on concrete work.

(m) Plasterer Laborers: Applies to all Laborers as agreed upon in the Agreement with the Chicagoland Association of Wall and Ceiling Contractors, and Construction and General Laborers' District Council of Chicago and Vicinity.

(n) Laborers who are engaged in the work of construction or wrecking of silos, etc., for grain elevators,

52

and are required to strip or wreck forms as hazardous heights in this work shall be paid chimney Laborers' rates.

(o) On salamander work or heating for frost prevention work, the building Laborers' rates of wages shall apply for the first eight (8) hours' work regardless of starting time Monday through Friday of each week. All hours worked on Saturday, Sunday or Holidays, and all hours worked after eight (8) hours per day, or forty (40) hours per week Monday through Friday, as above set forth, shall be paid for at one and one-half times the Building Laborers' rate of wages.

(p) Where services are performed by Laborers as watchmen, and such Laborers shall not be engaged in the performance of any other branches of work covered by this Agreement, they shall be paid not less than $1.50 below the Building Laborers' rate.

(q) Any building 125 feet high or more shall require the use of a Man Cage.

## Article 19
### REPORTING FOR WORK

Paragraph 1. Any Laborer reporting for work upon order expressed or implied by the Employer or his Agent and not put to work for any reason, except weather conditions, fire, accident or other unavoidable cause, shall receive four (4) hours' pay for lost time. Weather conditions shall be an exception to the requirement for "show up" or reporting pay provided the Employer has notified the Employee by telephone or has required in writing that the Employee call before he departs from home. The Employer must provide a definite and available phone number and must post this provision on each job site. When Laborers are directed to wait during inclement weather by the Employer, his Superintendent or Labor Foreman, they shall be paid for such waiting time.

When placing monolithic concrete, an Employee's eating period can be adjusted, but not beyond one-half

53

(½) hour before or after the regular scheduled time. Double time shall be paid if no eating period is permitted between shifts.

Any person other than a regular Employee who is called for temporary work for just a portion of one day, and who works more than four (4) hours in any one day, shall receive equivalent of not less than eight (8) hours' pay for said day, unless such Employee is prevented from completing a day's work because of inclement weather, in which case the Employee shall be paid for the time actually worked.

Paragraph 2. In case of an accident requiring medical attention during working hours, Laborers shall be permitted to go for or be taken for medical attention at once, and shall be paid for lost time that day.

In the event such injured Laborer is permitted to continue working by the doctor, but is required to return for periodic medical attention during working hours by the insurance physician or company doctor, such injured Laborer shall be paid for lost time, but not to exceed two (2) hours' pay for such visit to the doctor.

Paragraph 3. The Employer agrees that no punitive action shall be taken against their Employees, if said Employees refuse to cross a picket line that may be placed on the job or project of their Employer.

## Article 20
## PAYDAY

Paragraph 1. It is agreed that Employees shall be paid before quitting time on Wednesday of each week, except when the regular payday is on a Legal Holiday, in which case they shall be paid the day before such holiday at quitting time and except when Monday or Tuesday is a legal holiday, in which event the Employees may be paid on Thursday.

Paragraph 2. Wages are to be paid in full up to seventy-five (75) hours preceding payday. An Employee quit-

54

ting of his own accord shall be paid on the next regular payday. An Employee discharged or laid off shall be paid in cash or check on the job at the time he is laid off or be given a time check calling for four (4) additional hours to cover traveling time. Such additional hours are to be added at the time of giving check and shall be paid on presentation at the office of the Employer. If same is not promptly paid upon arrival at the office, and he is required to remain there during working hours, he shall be paid for such time, Sundays and Holidays excepted.

### Article 21
### WAGES

The following premiums in hourly wages shall be paid for work performed in the below-listed classifications:

Firebrick Work and Boiler
   Settler Laborers . . . . . . . . . . . . . . . . . .275
Jackhammerman (On
   Firebrick Work Only) . . . . . . . . . . . .275
Boiler Setter Plastic Laborers . . . . . . . .45
Chimney Laborers (Over
   40 Feet) . . . . . . . . . . . . . . . . . . . . . . . .10
Chimney on Firebrick . . . . . . . . . . . . .35
Scaffold Laborers . . . . . . . . . . . . . . . . .10
Caisson Diggers . . . . . . . . . . . . . . . . . .35
Jackhammerman . . . . . . . . . . . . . . . . .225
Power Driven Concrete Saws,
   Other Power Equipment . . . . . . . . . .225
Stone Derrickman and
   Handlers . . . . . . . . . . . . . . . . . . . . . . .20
Fireproofing and Fire
   Shop Laborers . . . . . . . . . . . . . . . . . .00
Well Point System Men . . . . . . . . . . . .35
Pumps for Dewatering, other
   Unclassified Laborers . . . . . . . . . . . .00

55

Windlass and Capstan
  Person . . . . . . . . . . . . . . . . . . . . . . . .15
Cement Gun Nozzle
  Laborers (Gunite) . . . . . . . . . . . . . . .15
Cement Gun Laborers . . . . . . . . . . . . .075
Plaster Laborers . . . . . . . . . . . . . . . . . .00

    Sub-Foremen shall receive $.45 premium wages over and above top Laborers' Scale under his supervision.

    Building Labor Foremen, General Foremen and Superintendents shall receive $.75 premium wages over and above top Laborers' Scale under his supervision.

56

WORKING CONDITIONS APPLICABLE TO
ROAD BUILDING AND RELATED CONSTRUCTION

The following additional rules and conditions shall apply to work performed on roads, bridges and other heavy and highway work.

### Article 22
### HOURS AND OVERTIME

When one shift is used, eight (8) hours per day, between 7:00 a.m. and 3:30 p.m. from Monday through Friday, inclusive, shall constitute the normal work day and straight time shall be paid. In weeks that have designated holidays that fall during the regular work week, but not more often than six (6) times per year, the Employer may schedule four (4) consecutive ten (10) hour work days at straight time. The Union and the Employees must be informed and the Union must give permission to the Employer in writing. There shall be no overtime except for an emergency nature to preserve life or property at the discretion of the Employer.

On emergency work, the four (4) hours immediately following the normal workday, from Monday through Friday, shall be paid for at the rate of time and one-half and thereafter double time will apply.

At the option of the Employer, the starting time for the day, (or the first) shift can be flexible. It is the Employer's responsibility to inform the Employee and obtain clearance from the Union of any change in starting time prior to quitting time the day before such change is to be effective. The first eight (8) hours' work shall be paid at straight time, the next four (4) hours at time and one-half and double time thereafter.

On emergency work performed on Saturdays, rates on single shift work shall be time and one-half for the first ten (10) hours, and thereafter double time shall be paid until 8:00 a.m., Monday; however, under no conditions shall more than ten (10) hours be worked at the rate of time and one-half.

57

Between December 1st and March 15th, Saturday may be used as a make-up day at straight time while tending masons whose Local Unions observe similar conditions; provided, however, that after forty (40) hours have been worked time and one-half will be paid.

### Article 23
### HOLIDAYS

Except to protect life or property, there shall be no work performed on Sunday or on the following holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day, or on days when such holidays are celebrated, and all hours worked shall be paid for at the double time rate.

When a holiday falls on Monday through Friday, make-up day on Saturday shall be paid at time and one-half for the first ten (10) hours and double time thereafter. If a holiday falls on a Sunday, it shall be celebrated on the following Monday. If a holiday falls on a day other than Sunday, it shall be celebrated on that date.

### Article 24
### SHIFT WORK

When necessary from Monday through Friday, the Employer shall have the right to work his Employees in consecutive shifts of eight (8) hours for straight time, with one-half (½) hour for lunch during the shift which must be paid for, and not less than, the established overtime rates for all hours worked over eight (8) hours each day. Employees shall receive eight (8) hours pay under this Section even if they are permitted to leave after seven and one-half (7½) hours, and it shall be a violation of this Agreement if an employee does not receive eight (8) hours pay. Employees who work eight (8) hours on a shift without receiving one-half hour lunch shall receive, in addition to the eight (8) hours pay as provided in this Section, one (1) hour's pay at the applicable premium rate.

Multiple shift work on Saturday shall start after 11:59 p.m. on Friday and not more than eight (8) hours will be worked at the rate of time and one-half during any one shift, and double time shall apply for all hours over and above eight (8) hours worked, until 8:00 a.m. Monday.

All hours worked on Sundays and Holidays, or on days when Holidays are celebrated, shall be paid at the double-time rate.

When less than three (3) shifts are worked, from Monday through Friday, during each day, the lunch period must be provided, but not paid for, and all established overtime rates must be complied with.

When it is necessary that the contractor use more than one shift for a period of three (3) or more consecutive days, the Union shall be notified twenty-four (24) hours in advance of the effective date of the starting of such multiple shift operations.

## Article 25
## PAYDAY

It is hereby agreed that the Employee shall be paid on the job and before quitting time on the regular payday of each weekly period. When a Laborer is discharged, he shall be paid in full and also, if he is laid off and demands his pay, except when the layoff is caused by bad weather or lack of material being furnished by others. Such wages due may be paid in person or placed in the mail on the same day of discharge or layoff at the option of Employer.

When a Laborer quits on his own accord, he shall receive his pay at the next regular payday. Payment may be made by check or currency of the United States at the option of the Employer; but in the event the Employer pays by check, he shall provide reasonable facilities for cashing same. Time checks payable by the Employer shall be considered valid, providing the Laborer be allowed two (2) hours traveling time. Such traveling time shall be added to the time check by the person issuing the same. If the Laborer is obliged to remain and wait before receiving

59

his check, he shall be allowed regular wages for such waiting time.

Where the Employer orders Employees to work and said Employees are compelled to wait upon the job, they shall be paid regular wages for such waiting time, provided they remain on the job. Any Employee reporting for work upon order expressed or implied by the Employer and not put to work for any reason except weather conditions, fire or accident, shall receive four (4) hours' pay. When Employer sends Employees from one job to another during working hours, regular wages shall be paid for such travel time. Single time shall be paid for moving equipment, except on Sunday and holidays, when double time rates shall be paid. The Union reserves the right to strike at any time for wages which are overdue or underpaid, as well as for any violation of this Agreement.

On General Election Days, the individual employed in this trade shall be allowed, not to exceed two (2) hours' time, without pay, for the purpose of voting.

### Article 26
### REPORTING FOR WORK

Paragraph 1. If any Employee of the Employer shows up in the morning for work and is not put to work for any reason whatsoever, he shall receive at least two (2) hours' pay.

Weather conditions shall be an exception to the requirement for "show up" on reporting pay provided the Employer has notified the Employee by telephone or has required in writing that the Employee call before he departs from home. The Employer must provide a definite and available phone number and must post this provision on each job site.

If any Employee of the Employer works any time in excess of four (4) hours after the starting time of any day, and he does not finish the day at work through no fault of his own, he shall receive eight (8) hours' pay.

60

The Employer agrees that no punitive action shall be taken against their Employees, if said Employees refuse to cross a picket line that may be placed on the job or project of their Employer.

Paragraph 2. In case of an accident requiring medical attention during working hours, Laborers shall be permitted to go for or be taken for medical attention at once, and shall be paid for lost time that day.

In the event such injured Laborer is permitted to continue working by the doctor, but is required to return for periodic medical attention during working hours by the insurance physician or company doctor, such injured Laborer shall be paid for lost time, but not to exceed two (2) hours' pay for such visit to the doctor.

### Article 27
### WAGES

The following premiums in hourly wages shall be paid for work performed in the below-listed classifications:

| | |
|---|---|
| Rakers and Lutemen | .275 |
| Machine-Screwmen | .275 |
| Asphalt Tampers and Smoothers | .275 |
| Kettlemen | .275 |
| Mixermen | .275 |
| Drum-Men | .275 |
| Jackhammermen (Asphalt) | .275 |
| Paintmen | .275 |
| Mitre Box Spreaders | .275 |
| Laborers on Birch, Overman and Similar Spreader Equipment | .275 |
| Laborers on Apsco | .275 |
| Laborers on Air Compressors | .275 |
| Material Expeditor (Asphalt Plant Laborers) | .00 |

61

Paving Form Setters. . . . . . . . . . . . . . .275
Jackhammerman (Concrete) . . . . . . . .275
Power Drive Concrete Saws,
  Other Power Equipment . . . . . . . . . .275
Cement Gun Nozzle (Laborers)
  Gunite. . . . . . . . . . . . . . . . . . . . . . . .15
Cement Gun Laborers. . . . . . . . . . . . .075
Street Paving, Grade Separation,
  Sidewalk Curb and Gutter
  Strippers and all Other
  Laborers . . . . . . . . . . . . . . . . . . . . . .00
General Foreman of Laborers . . . . . . 1.575
Superintendent. . . . . . . . . . . . . . . . . 1.575
Foremen of Laborers. . . . . . . . . . . . . 1.15
Asphalt Foreman. . . . . . . . . . . . . . . 1.15
Cut-Out Foreman . . . . . . . . . . . . . . . 1.15
Street Repair Foreman. . . . . . . . . . . . 1.15

## WORKING CONDITIONS APPLICABLE TO SEWER, TUNNEL AND RELATED UNDERGROUND CONSTRUCTION

The following additional rules and conditions shall apply to work performed on sewer, tunnel and related underground construction.

### Article 28
### JOB NOTIFICATION AND PRE-JOB CONFERENCE NOTIFICATION
### (Tunnel Work Only)

1. Immediately upon obtaining a job, the Employer shall notify the Union with jurisdiction over the job, describing the size, location and length of the proposed job and the starting time thereof, at least one (1) week prior to the proposed starting date, for the purpose of arranging a pre-job conference.

2. The Employer or his authorized representatives, the District Council, and the Local Union involved shall hold the aforesaid pre-job conference so that the start and continuation of the work may progress without interruption. It shall be the purpose of the pre-job conference to agree upon such matters as the applicable work week and establish starting time, the number of men to be employed, including the number of key men required by the Employer, the method of referral, whether or not there will be a check-off of Union initiation fees and dues, or Agency fees, the applicable wage rates and other matters, not including the interpretation of this Agreement it being agreed that any interpretation of this Agreement, should be made between the principal parties hereto so that proper application thereof may be made on the jobs.

3. The Union and the Employer Associations agree to send a copy of this Agreement to all of their affiliates so that the work covered by this Agreement may be performed in an effective and peaceful manner and the Union agrees that the terms of this Agreement shall be recognized by its affiliated District Councils and Local Unions.

63

## Article 29
### WAGES

The following premiums in hourly wages shall be paid for work performed in the below-listed classifications:

**SEWER WORK**

Air Track Drill Operations, Bottom Men, Bracers-Bracing, Bricklayers Tenders, Catch Basin Diggers, Drainlayers, Dynamiters, Form Men, Jackhammermen, Powerpack, Pipelayers, Rodders, Welders and Burners, Well Point System Men . . . . . . . . . . . . . . . . . . . . . . . . $.35

Cement Carriers, Cement Mixers, Concrete Repairmen, Mortar Men, Scaffold Men, Second Bottom Men. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $.225

Concrete Laborers, Steel Setters . . . . . . . . . . . . . . $.125

Signal Men, Top Laborers, All Other Laborers . . . $.00

The premium over and above wages and classifications for all Employees working in compressed air should be as follows:

 0 - 15 pounds . . . . . . . . . . . $1.00 per hour
16 - 20 pounds . . . . . . . . . . $1.50 per hour
21 - 26 pounds . . . . . . . . . . $2.00 per hour
27 - 33 pounds . . . . . . . . . . $3.00 per hour
34 and over . . . . . . . . . . . . . $4.00 per hour

**TUNNEL WORK**

Maintenance Technician, Air Track Drill Operators, Miner, Bricklayers Tenders, Concrete Blower Operators, Drillers, Dynamiters, Erector Operators, Form Men, Jackhammermen, Powerpack, Mining Machine Operators, Mucking Machine Operators, Laser Beam Operators, Liner Plate & Ring Setter, Shield Driver, Power Knife Operators, Welders-Burners, Pipe Jacking Machine Operators, Skinners, . . . . . . . . . . . . . . . . $.35

64

Concrete Repairmen, Lock Tender (Pressure Side), Mortar Men, Muckers, Grout Machine, Operators, Track Layers ................................... $.225

Air Hoist Operators, Key Board Operators, Car Pushers, Concrete Laborers, Grout Laborers, Lock Tenders (Free Air Side), Steel Setters, Tuggers, Switchmen..... $.125

Cage Tenders, Dump Men, Flagmen, Signalmen, Top Laborers, Rod Men ........................ $.00

Paragraph 2. Sewer and Caisson foreman shall receive a $1.10 premium, sub-foremen a $.80 premium; Tunnel foremen a $1.60 premium, sub-foremen a $1.10 premium; Underground General Foremen shall receive a $1.60 premium; Underground Superintendents shall receive a $1.60 premium over and above atop Laborers' scale under his supervision.

### Article 30
### WORK HOURS - OVERTIME - HOLIDAYS
### ELECTION DAYS

HOURS:

Paragraph 1. Eight (8) hours shall constitute a regular workday, from Monday through Friday.

Paragraph 2. Forty (40) hours shall constitute a regular workweek, from Monday through Friday.

OVERTIME:

Paragraph 1. Time and one-half shall be paid for all time worked up to four (4) hours in excess of eight (8) hours in any one regular work day.

Paragraph 2. Double time shall be paid for all time worked in excess of twelve (12) hours in any one regular workday.

Paragraph 3. Time and one-half shall be paid for all time worked in excess of forty (40) hours in any workweek.

65

Paragraph 4. Time and one-half shall be paid for any work done on Saturdays for the first ten (10) hours regardless of the number of hours worked in the regular workweek; and double time shall be paid for all time worked over ten (10) hours.

Paragraph 5. In weeks that have designated holidays that fall during the regular workweek, but not more often than six (6) times per year, the Employer may schedule four (4) consecutive ten (10) hour work days at straight time. The Union and the Employees must be informed and the Union must give permission to the Employer in writing.

HOLIDAYS:

The following days shall be considered Holidays and shall be paid at double time rates: All Sundays, New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day. All Sunday and Holiday work shall be cut to a minimum and shall be resorted to only protect life and property. When a Holiday falls on Monday through Friday, make-up day on Saturday shall be paid at time and one-half for the first ten (10) hours and double time thereafter. If a holiday falls on a Sunday, it shall be celebrated on the following Monday. If a holiday falls on a day other than Sunday, it shall be celebrated on that date.

ELECTION DAYS:

Paragraph 1. On Election Days, the individual employee in this trade shall be allowed not more than two (2) hours' from the job without pay for the purpose of voting.

Paragraph 2. The time allowed shall be at the Employer's discretion so as not to interfere with scheduled work, except where such discretion is in conflict with State or Federal laws.

## Article 31
## SHIFT WORK

**Paragraph 1.** No Employee shall work more than one shift of eight (8) hours in twenty-four (24), except as herein provided.

**Paragraph 2.** Eight (8) hours shall constitute a night's work which under normal, usual and ordinary conditions and circumstances shall commence at 4:00 P.M. when two gangs are employed, where three gangs are employed, one shift will follow the other, and in order that work may be continuous, the shifts shall begin at 8:00 A.M.; 4:00 P.M.; and 12:00 o'clock midnight.

**Paragraph 3.** Under other conditions and circumstances, starting time of eight (8) hour shifts shall be optional with the Employer, provided said Employer notifies the Employee of such starting time.

**Paragraph 4.** When three eight (8) hours shifts or two twelve (12) hour shifts are worked, one (1) eating period of one-half hour during each shift shall be allowed without a deduction of pay. Where one or two eight (8) hour shifts are worked, the eating-period pay will not apply. Employees shall receive eight (8) hours pay under this Section even if they are permitted to leave after seven and one-half (7½) hours, and it shall be a violation of this Agreement if an employee does not receive eight (8) hours pay. Employees who work eight (8) hours on a shift without receiving one-half hour lunch shall receive, in addition to the eight (8) hours pay as provided in this Section, one (1) hour's pay at the applicable premium rate.

When it is necessary that the contractor use more than one shift for a period of three (3) or more consecutive days, the Union shall be notified twenty-four (24) hours in advance of the effective date of the starting of such multiple shift operations.

**Paragraph 5.** Where a second 8-hour shift is established, employees working on the second shift shall receive fifty cents ($.50) per hour in addition to their base

67

rate of pay. Where a third shift is established, or where a second 12-hour shift is established, employees working on such shifts shall receive one dollar ($1.00) per hour in addition to their base rate of pay.

### Article 32
### WORK RULES AND CONDITIONS

Paragraph 1. REPORTING TIME PAY (a) After a person has been hired and ordered to report for work at the regular starting time and no work is provided for him on the day he has so reported, he shall receive four (4) hours pay at the rate applicable for that day, weather conditions, fire, accident or other unavoidable cause, beyond the Employer's control excepted: however, when an employee is directed to wait before starting work during inclement weather by the Employer, his Superintendent or Foreman, and said employee is not notified within thirty (30) minutes that no work will be done because of such conditions, the employee shall receive two hours pay; further, if Employees perform any work and then are prevented from completing a day's work because of inclement weather, they shall receive a minimum of four (4) hours pay; but if they work over four (4) hours, they shall be paid for eight (8) hours.

b. WORK DAY - Once a work day has been established (starting time) it shall not be changed unless agreed upon by the Employer and the Union. (With the exception of emergencies.)

c. When notification that work shall not be performed on a particular day, notification of such fact to the Steward shall constitute notice to the men, provided such notification is made during working hours and the Steward is afforded a reasonable opportunity to notify the men.

Paragraph 2. When an Employee is discharged or laid off, the Employer shall pay all wages due him on the day of discharge or layoff. Wages due, at the option of the Employer, may be paid in person or placed in the mail that same day.

68

Paragraph 3. An Employee quitting of his own accord shall be paid on the next regular pay day.

Paragraph 4. At the discretion of the Employer or his Foreman, all small tasks customarily performed by Employees covered by this Agreement may be done by others, if:

(a) Such Employees are not on the job;

(b) The tasks to be performed and can be done in not more than one-half hour in any one day.

Paragraph 5. SAFETY AND SANITATION Fresh drinking water and suitable shelters for the changing of work clothes shall be provided by the Employer on the job site. In inclement weather, heated shelters shall be provided for such purpose, and all work of the Employee shall be performed under mutually agreed safety and sanitary conditions in conformity with Federal, State and Municipal regulations in effect.

Paragraph 6. TOOLS AND EQUIPMENT There shall be no restrictions of the use of any type of machinery, tools or labor-saving devices. Tools, boots, hard hats, rain gear, implements and safety equipment shall be furnished by the Employer and the same shall remain the property of the Employer.

Paragraph 7. WORKER'S COMPENSATION The Employer agrees to provide security for the payment of compensation to Employees injured, in accordance with the provisions of the Illinois Worker's Compensation Act. The Employer shall, upon request of the Union, submit a certificate of compliance evidencing same.

Paragraph 8. RIGHTS OF PARTIES Business Representatives of the Union shall be allowed to visit all jobs during working hours to interview the Steward or men working on the job.

In all tunnel work, the Union shall be recognized as the sole Local of the Laborers' International Union of

69

North America to perform the work classified under this Agreement.

Paragraph 9. PAYMENT DISPUTES Notwithstanding this Agreement of the parties that, in principle, disputes should never cause work stoppages, the parties consider an Employer's default in payment of wages, and contributions to the Health and Welfare and Pension Funds to be grounds for an exception to this principle, and provisions for enforcement of it hereafter made; and the Union is, therefore, expressly authorized to cause the Employees to stop work immediately on any job on which wages admittedly owed are not paid promptly when due. The authorization to cause immediate work stoppage shall not extend to any case where a dispute in good faith exists between the Employer, Employee or Employees as to the amount due. The Employer agrees that no punitive action shall be taken against their Employees, if said Employees refuse to cross a picket line that may be placed on the job or project of their Employer.

70

## WORKING CONDITIONS APPLICABLE TO
## KANE, KENDALL, McHENRY AND BOONE COUNTIES

The following additional rules and conditions shall apply to work performed in Kane, Kendall, McHenry and Boone Counties, IL.

### Article 33
### WORKING CONDITIONS

Paragraph 1. The Employer agrees to a normal workload for the employees. Should a dispute arise over the interpretation of a normal workload, the matter shall be promptly turned over to the grievance and arbitration procedure for settlement.

Paragraph 2. If a holiday falls on a Sunday, it shall be celebrated on the following Monday. If a holiday falls on a day other than Sunday, it shall be celebrated on that date.

### Article 34
### WAGES

The following premiums in hourly wages shall be paid for work performed in the below-listed classifications:

BUILDING

| | |
|---|---|
| Jackhammer & Air Spade | $ .25 |
| Torch Men (Demolition) | $ .15 |
| Chain Saw Men | $ .25 |
| Power Vibrator | $ .10 |
| Power Tampers | $ .00 |
| Swing Stage & Boatswain | $ .25 |
| Cement Gun Nozzle Men | $ .25 |
| Tile Layer & Bottom Men | $ .35 |
| Hod Carrier & Plasterer Tender | $ .35 |
| Mortar Men | $ .15 |
| Tunnel Men | $ .25 |
| Caisson Laborers | $ .50 |

71

Dynamiters . . . . . . . . . . . . . . . . . . . . $ .50
Tree Surgeon-Toppers . . . . . . . . . . . $ .25
Night Watchmen . . . . . . . . . . . . . . . $ .00
Dosimeter Use . . . . . . . . . . . . . . . . . $1.00
Asbestos Laborer . . . . . . . . . . . . . . . $ .00
Toxic & Hazardous
   Material Remover . . . . . . . . . . . . . $1.00
Bobcat . . . . . . . . . . . . . . . . . . . . . . . $ .00
Forklift . . . . . . . . . . . . . . . . . . . . . . . $ .00

HEAVY AND HIGHWAY
Asphalt Laborers & Help . . . . . . . . $ .00
Asphalt Plant Lab . . . . . . . . . . . . . . $ .00
Stripping Laborers . . . . . . . . . . . . . . $ .00
Clipper Type Concrete Saw
   and Self-Propelled Saws . . . . . . . . $ .00
Chain Saw Man (while
   operating only) . . . . . . . . . . . . . . . $ .25
Air Tampers and Vibrators . . . . . . . $ .05
Mortar and Concrete Mixers . . . . . . $ .05
Stringline and Form Setters on
   Concrete Highways,
   Streets, Alleys, etc . . . . . . . . . . . . . $ .15
Labor Foreman . . . . . . . . . . . . . . . . . $ .75
General Foreman . . . . . . . . . . . . . . . . $ .75
Superintendent . . . . . . . . . . . . . . . . . $ .75
Torch Man (On demolition only) . . . $ .15
Sheeting and Cribbing Men . . . . . . . $ .15
Blacktop Rakers and Luteman . . . . . $ .15
Machine Screwman . . . . . . . . . . . . . . $ .15
Jackhammer Men . . . . . . . . . . . . . . . $ .25
Drillmen, Concrete Breakers
   and Air Spade . . . . . . . . . . . . . . . . $ .25
Tunnel Laborers:, Tile Layers
   and Bottom Men . . . . . . . . . . . . . . $ .35
Caisson Diggers . . . . . . . . . . . . . . . . $ .50
Dynamiters . . . . . . . . . . . . . . . . . . . . $ .50

72

| | | |
|---|---|---|
| Dynamite Handlers (Helpers) ...... | $ | .25 |
| Flagman........................ | $ | .00 |
| Maintenance Men Work between<br>November 15 and April 1,<br>work done in Shop or Yard<br>Not includ. work performed<br>in construction area............. | $ | .00 |
| Day and Night Watchman......... | $ | .00 |
| Laser Beam ..................... | $ | .00 |
| Bobcat......................... | $ | .00 |
| Forklift ........................ | $ | .00 |
| Asbestos. Laborers............... | $ | .00 |
| Toxic & Haz.Lab ............... | $1.00 | |
| Dosimeter ...................... | $1.00 | |

**Stringline and Pegs on Slip Form Machines:** It shall be the work of the laborers to set all lines, and leveling for slip form machines (such as the Miller Formless, Curb Master of Iowa, Go-Mo-Co., and other similar slip form machines). It also shall be the work of the laborers to set the plastic line for the C.M.I. Auto Grader, asphalt machines, and other similar graders. The cleaning of the Auto Graders and slip form machines will be the work of the laborers. The rate of pay for this classification shall be fifteen cents ($.15) over the common laborer's rate of pay.

**Lutemen and Rakers:** Laborers employed as lutemen and rakers will be paid the specified rate for this classification and will suffer no reduction in pay for the term of their employment.

**Screwman:** The screwman will receive screwman pay only while performing this classification of work, except if starting the day at screwman pay he shall be allowed to complete the day at no reduction in pay.

Where services are performed by Laborers as watchmen, and such Laborers shall not be engaged in the performance of any other branches of work covered by this Agreement, they shall be paid not less than $1.50 below the Building Laborers' rate.

73

## WORKING CONDITIONS APPLICABLE TO WILL AND GRUNDY COUNTIES

The following additional rules and conditions shall apply to work performed in Will and Grundy Counties, IL.

### Article 35
### STEWARDS

The Employer agrees to recognize the right of the Union, in whose jurisdiction a job or a project is located the right to appoint one or more Union employees to act as Stewards on said job or project. Such Stewards shall be subject to the same terms of employment as any other employee, but taking into consideration that the Steward should be present during all working hours and also the last laborer on the job; providing that he does not replace another laborer that was previously assigned to specific work.

The Stewards duties are to hear and attempt to adjust disputes and differences that may arise between members of this Union and the Employer. The Stewards if unable to reconcile a dispute with the Employer shall report same to the office of the Union which will settle or adjust such disputes. The Stewards will also be recognized as the laborers Safety Representative.

In no instance shall the Steward be discriminated against because of his affiliation with the Union or because of his activities on behalf of the Union.

The Union shall have the right to place a steward onto any jobsite of an Employer, in lieu of appointing a steward from among the existing laborers, if the Employer has, during the term of this Agreement, violated the wage or benefit provisions of this Agreement. Violations must be established through the grievance procedure, court order or written settlement agreement.

74

### Article 36
### WAGES

Paragraph 1. The following premiums in hourly wages shall be paid for work performed in the below-listed classifications:

a. Tunnel Miners, and all laborers inside tunnel, Air Blow Pipemen, Torchmen (Burners), Mortaring Men on Sewer and drain pipe (the applying of mortar and composition mixes), all bottom men on sewer work all sewer and drain pipe layers Multiple Concrete Duct or any other type of pipe used on Public Utility work 8 feet or more below ground level, and all other sewer and trench laborers 8 feet or more below ground level regardless of excavation area, all labor work inside Cofferdam, the use of a 10 foot or more drill steel for hand held drills, Caisson Laborers ground level down to 15 feet, all air tools 8 feet or more below ground level, all laborers working on swinging suspended or any type or make of scaffolds, 48 feet to 100 feet, all Chimney and Silo Laborers working at a height of 48 feet to 100 feet, all tamping hammers over 150 lbs., all laborers working inside of a sphere or any type of make or tank at a height of 48 feet to 100 feet, all Hydraulic, electric and air tools or any other type 8 feet or more below ground level, Vibrators any type 8 feet or more below ground level: $.25

b. Chimney and Silo Laborers for every additional 50 feet or any part thereof above 100 feet high shall be paid an additional $1.00 per hour above the wage rate beginning at scale plus $.25

c. All Laborers working inside of a sphere or any type of tank for every additional 50 feet or part thereof above 100 feet in height shall be paid an additional $.50 per hour above the wage rate beginning at scale plus $.25

d. Asphalt Rakers, Hod Carriers, Plaster Laborers, Gunnite Laborers, Slab for setters on Roads, Highways, Streets, Airport Runways, and Radii (any type of form) stringline men for all aforementioned work, Wagon &

75

Tower drillers on land and floating plant used on dredging, Asphalt Gunners and Plug Men (Undercoating on road work), Mortar Pump Laborers and Plaster Pump Laborers: $.20

e. Outside Tunnel Miner Helpers, Sewer and drain pipe layers and Multiple Concrete Duct or any other type of pipe used on Public Utility Work, ground level down to 8 feet, Pumpcrete Pipe Handlers, Blasting Men Helpers: $.10

f. Gunnite Nozzle Men, Caisson Laborers and all tamping Hammers from 150 lbs. and over, from 15 feet below ground level down to 50 feet: $.50

g. All Underground Cavern Laborers, Caisson Laborers 50 feet or more below ground level, Laborers working under radioactive conditions (suiting up), Blasting Men (Powdermen): $.85

h. Working Foreman issuing orders to Laborers under section 1 A, B, C, D, E, F, & G shall receive an increase of fifty cents (50¢) per hour above the wages set forth therein. Minimum wage: $.50

i. Non Working Foreman issuing orders to Laborers under section 1 A, B, C, D, E, F, & G shall receive one dollar ($1.00) per hour above the wages set forth therein.

j. General Labor Foreman shall receive two dollars ($2.00) per hour above the wages set forth therein.

A Union Member issuing orders to one or more General Foremen: $2.60

k. Mortar Mixers, handling asphalt shingles, patented scaffolds, sewer and trench ground level down to 8 feet, Catch Basin and Manhole Diggers, mesh handling on road work, Cement and Mineral Filler Handler, Concrete Puddlers, Batch Dumpers, (cement & asphalt), Vibrator Operators, Sand and Stone Wheelers, to Mixer, (Handlers), Concrete Wheelers, Air tamping Hammermen, Concrete and Paving Breakers, Rock Drillers, jackhammermen, Chipping Hammermen, 1 Bag Mixer, Asphalt Laborers, chain and power saws, Pit Men, all fence

76

Laborers, Mason Tenders, (Mortar & Brick Wheeler), Wagon & Tower drill helpers, Kettlemen and Tarmen, Tank Cleaners, Scaffold & Staging Laborers, Pot Firemen, (Tarmen), Heater Tender for any purpose, water pumps, (Portable Water Pumps shall be tended by Laborers if the Employer determines tending is required), rip rap, Electrician, Plumber and Finisher Helpers (minimum), handling of slab steel road forms in any manner, except road form setting, setting center strips, contraction and expansion joints (road work), unloading and handling thereof of the following: Lumber, brick, transite materials, cast iron water pipe, reinforced concrete rods, sewer and drain tile, railroad ties and all other creosoted materials, paving blocks and concrete forms, handling of insulation of any type, all work involving the unloading of materials, fixtures, or furnishings whether crated or uncrated, all mortar and composition mixers of sewer work, track Laborers, Chimney and Silo Laborers working at a height of 1 to 48 feet, all Laborers working on swinging, suspended, or any type or make of scaffolding 1 foot to 48 feet, all Laborers working inside a sphere or any type of make of tank minimum rate, all Laborers working inside a sphere or any type or make of tank from bottom to a height of 48 feet minimum rate, form strippers (any type) Mechanical or motorized buggies, for concrete or masons Employers, the use of skid steer loads and forklifts or any other machinery which replaces the wheelbarrow or buggy, handling multiple concrete duct or any other type of pipe used in Public Utility work unless otherwise specified herein, snapping of Wall ties and removal of rods, drilling of Anchor Bolt Holes, concrete or asphalt clipper type saws and self propelled saws, Shoulder and Grade Laborers, all hydraulic electric and air or any other type of tools, grouting and caulking, carpenter helpers, cleaning lumber, nail pulling, deck hand, dredgehand, shore Laborers, Bankmen on Floating Plant, Tool and Material Checkers, (on a job site requiring a Tool Shanty, said Tool Shanty shall be tended by a Laborer if the Employer determines tending is required), Signalmen and Flagmen on all construction work defined

77

herein, cleaning of debris, removal of trees, concrete curing, temporary concrete protection, regardless of manner or materials used, tuck helpers, Laborers on Apsco, Janitorial Service, Wrecking and Demolition Laborers, all landscaping, laying of sod, planting of trees: $ .00

Paragraph 2. Asbestos Use. A premium of $1.00 per hour shall be paid to any Laborer required to work with asbestos, who is a certified asbestos Laborer who is licensed by the State of Illinois as an Asbestos Abatement worker. Any equipment necessary to perform work or physical examination required by the Employer will be paid for by the Employer.

### Article 37
### FOREMAN AND GENERAL FOREMAN

Where there are three (3) to six (6) Laborers employed on a job, one Laborer shall be a working Foreman; where there are seven (7) or more Laborers employed on a job, one (1) Laborer shall be a non-working Foreman. The Employer may select a working or a non-working Foreman from the group of Laborers to supervise in the above mentioned. The Employer may advance the working Foreman to a non-working Foreman if he so desires.

This Agreement shall not include the supervisory forces classed as clerical employees; timekeepers, superintendents, master mechanics or general labor foreman. In the event that the Employer desires to employ a General Labor Foreman who is a member of the Union his wages shall not be less than stipulated herein.

A General Labor Foreman is considered as such when he issues orders to one or more Labor Foreman. In the event that the Employer desires to employ a Union Member who issues orders to one or more General Labor Foremen his wages shall not be less than as stipulated herein.

## Article 38
## SHIFT WORK

Paragraph 1. All employees working the 4:00 P.M. to 12:00 Midnight shift and the 12:00 Midnight to 8:00 A.M. shift where shift work is involved shall receive an additional fifty ($.50) cents per hour above their regular wage rate.

Paragraph 2. No shift work will be allowed for periods of less than 5 days unless it is imperative; in that event, all work done before and after regular working hours (8:00 A.M. to 4:30 P.M.) shall be paid as overtime.

Paragraph 3. Where two twelve (12) hour shifts are used, an eating period of one-half hour shall be allowed each shift without loss of pay. Time and one-half (1.5) the regular hourly wage shall be paid for the first two and one half (2.5) hours after the eighth hour, and double time shall be paid for all hours worked thereafter. A paid twenty (20) minute break shall be provided during the four (4) hour overtime.

## Article 39
## OTHER PAY RATES
## BUILDING CONSTRUCTION AND
## HEAVY AND HIGHWAY

Paragraph 1. Reporting Time. It is agreed that when a Laborer is called by the Employer Monday through Friday or an employee already employed, reports for work on a job site or place designated by the Employer, and is not put to work at his regular starting time (8:00 A.M.) due to any reason except inclement weather, i.e., Acts of God, lightning, tornadoes, fire, etc., or for any other reason and is sent home, he shall receive not less than four (4) hours pay, unless such Employee is notified two (2) hours before starting time that no work is available for him. If the Laborers are sent home, that day from job site, the Employer must notify all members or the Steward of said action.

**Paragraph 2. Waiting Time.** It is agreed that when a Laborer is called or a regular employee reports for work at his regular starting time (8:00 A.M.) and the Employer is unable to put him to work due to any reason except inclement weather, i.e., Acts of God, lightning, tornadoes, fire, etc., or for any other reason, and the Employer desires that the Employee wait on the site of the project to be available, his waiting time shall not be less than four (4) hours and he shall be paid at his regular rate of pay. In the event that the Employee waits more than four (4) hours, all additional time shall be paid on multiples of one (1) hour. Employees must remain on job site to receive this pay and be available for work.

**Paragraph 3. Pay at Highest Rate Classification.** Due to various wage classifications as set forth herein, it is agreed that when an employee is required to work at more than one (1) classification in any one day, his wage rate shall be paid at the highest rate classification for that day.

**Paragraph 4. Call-In Pay.** It is agreed when a new employee is called or an employee already employed covered by this Agreement reports for work and for whom any work is provided, regardless of the time he works, shall receive the equivalent of not less than four (4) hours pay at his regular rate of pay for that day. Further, an employee who works more than four (4) hours in any day shall receive the equivalent of not less than eight (8) hours pay.

Employees who perform any work and then are prevented from completing a day's work, due to inclement weather only they shall receive a minimum of four (4) hours pay an employee who works more than four (4) hours and less than six (6) hours shall receive not less than six (6) hours pay an employee who works more than six (6) hours and less than eight (8) hours shall receive not less than eight (8) hours pay.

**Paragraph 5. Call Off.** The Employer will be excused from paying show-up time because of weather,

80

provided that he has notified the Employee by telephone or has required, in writing, that the Employee call before he departs from home. The Employer must provide a definite and available phone number and must post this provision on each job site.

If the above provisions are not complied with, the Employer will be required to pay two (2) hours show-up time to any Employee who appears on the job and cannot work because of the weather. This provision applies to the Contract in total.

81

WORKING CONDITIONS APPLICABLE
TO LAKE COUNTY

The following additional rules and conditions shall apply to building/mason and road/sewer work performed in Lake County, IL.

Article 40
SHIFT WORK

**Section A.** When it is necessary that the Employer use more than one shift for a period of three (3) or more consecutive days, the Local Union's Business Manager shall be notified twenty-four (24) hours in advance of the effective date of the starting of such multiple shift operations. In cases where the multiple shift operations are to run greater than five (5) consecutive days, a pre-job conference shall take place between the Business Manager of Local 152 or his representative and the Employer before such shift work will be allowed. In the event permissible shift work does not fulfill the requirements as stated above, except for conditions beyond the Employers control, time worked will revert to premium wages for the second and third shift.

**Section B.** On Multiple shift arrangements, the work week shall start at 8:00 a.m. Monday, and continue until 7:59 a.m. Saturday. In no event shall regular working hours of different shifts overlap.

**Section C.** When three (3) eight (8) hour shifts are used, the Employees on the first shift shall receive eight (8) hours' pay for eight (8) hours worked. Employees on the second shift shall receive eight (8) hours' pay for seven and one-half (7½) hours worked. Employees on the third shift shall receive eight (8) hours' pay for seven (7) hours worked. On all three shifts one-half hour shall be allowed for eating lunch. Employees on the second shift shall receive eight (8) hours pay under this section even if they are permitted to leave after seven and one-half (7½) hours and Employees on the third shift shall receive eight (8) hours pay under this section even if they are permitted to

82

leave after seven (7) hours, it shall be a violation of this agreement if an employee does not receive eight (8) hours pay. Employees who work eight (8) hours on a shift without receiving a one-half hour lunch shall receive, in addition to the eight (8) hours pay as provided in this Section, one (1) hour's pay at the applicable premium rate. Any work done in excess of eight (8) hours on the first shift, and in excess of seven and one-half (7½) hours on the second and seven (7) hours on the third shifts shall be paid wages at the rate of double time.

Section D. When two twelve (12) hour shifts are used, an eating period of one-half hour shall be allowed each shift without deductions in pay and all time in excess of eight (8) hours shall be paid at the regular overtime rates, that is to say, and two and one-half (2½) hours immediately following the first eight (8) hours shall be paid for at the rate of time and one-half, and double time thereafter. Employees who work one of two twelve (12) hours shift without receiving a one-half hour lunch shall receive, in addition to the twelve (12) hours pay as provided in this Section, one-half hour's pay at the applicable premium rate.

Section E. When two eight (8) hour or two ten (10) hour shifts are used, an eating period of one-half (½) hour shall be allowed, but not paid for.

Section F. On Saturday, other than single time shift, shift work shall start at 8:00 a.m. and the first ten (10) hours of each shift shall be paid for at the rate of time and one-half, and thereafter double time shall be paid; however, under no conditions shall more than ten (10) hours be worked at the rate of time and one-half on any one shift.

The parties hereby agree to the terms of this Agreement by their execution hereof.

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____

By: _____

Dated: ___7/8/14_____

CHICAGO AREA INDEPENDENT
CONSTRUCTION ASSOCIATION

By: _____

Dated: ___7/2/14_____

84

ADDENDUM
CONSTRUCTION INDUSTRY SERVICE
CORPORATION JOINT LABOR-MANAGEMENT
UNIFORM DRUG/ALCOHOL ABUSE PROGRAM

**I. Policy Statement**

The parties recognize the problems created by drug and alcohol abuse and the need to develop prevention and treatment programs. (Company Name), and the signatory unions seek to protect people and property, and to provide a safe working environment. The purpose of the following program is to establish and maintain a drug free, alcohol free, safe, health work environment for all of its employees.

**II. Definitions**

a. **Company Premises** - The term "Company Premises" as used in this policy includes all property, facilities, land, buildings, structures, automobiles, trucks and other vehicles owned, leased or used by the company. Construction job sites for which the company has responsibility are included.

b. **Prohibited Items & Substances** - Prohibited substances include illegal drugs (including controlled substances, look alike drugs and designer drugs), alcohol beverages, and drug paraphernalia in the possession of or being used by an employee on the job.

c. **Employee** - Individuals, who perform work for (Company Name), including, but not limited to, management, supervision, engineering, craft workers and clerical personnel.

d. **Accident** - Any event resulting in injury to a person or property to which an employee, or contractor/contractor's employee, contributed as a direct or indirect cause.

e. **Incident** - An event which has all the attributes of an accident, except that no harm was caused to person or property.

85

f. Reasonable Cause - Reasonable cause shall be defined as excessive tardiness, excessive absenteeism, and erratic behavior such as noticeable imbalance, incoherence, and disorientation.

## III. Confidentiality

a. All parties to this policy and program have only the interest of employees in mind, therefore, encourage any employee with a substance abuse problem to come forward and voluntarily accept our assistance in dealing with the illness. An employee assistance program will provide guidance and direction for you during your recovery period. If you volunteer for help, the company will make every reasonable effort to return you to work upon your recovery. The company will also take action to assure that your illness is handled in a confidential manner.

b. All actions taken under this policy and program will be confidential and disclosed only to those with a "need to know".

c. When a test is required, the specimen will be identified by a code number, not by name, to insure confidentiality of the donor. Each specimen container will be properly labeled and made tamper proof. The donor must witness this procedure.

d. Unless an initial positive result is confirmed as positive, it shall be deemed negative and reported by the laboratory as such.

e. The handling and transportation of such specimen will be properly documented through the strict chain of custody procedures.

## IV. Rules - Disciplinary Actions - Grievance Procedures

1. *Rules* - All employees must report to work in a physical condition that will enable them to perform their jobs in a safe and efficient manner. Employees shall not:

a. Use, possess, dispense or receive prohibited substances on or at the job site; or

86

b. report to work with any measurable amount of prohibited substances in their systems.

2. *Discipline* - When the company has reasonable cause to believe an employee is under the influence of a prohibited substance, for reasons of safety, the employee may be suspended until test results are available. If no test results are received after three (3) working days, the employee, if available, shall be returned to work with back pay. If the test results prove negative, the employee shall be reinstated with back pay. In all other cases:

a. Applicants testing positive for drug use will not be hired.

b. Employees who have not voluntarily come forward, and who test positive for drug use, will be terminated.

c. Employees who refuse to cooperate with testing procedures will be terminated.

d. Employees found in possession of drugs or drug paraphernalia will be terminated.

e. Employees found selling or distributing drugs will be terminated.

f. Employees found under the influence of alcohol while on duty, or while operating a company vehicle, will be subject to termination.

3. *Prescription Drugs* - Employees using prescription medication which may impair the performance of job duties, either mental or motor functions, must immediately inform their supervisors of such prescription drug use. For the safety of all employees, the company will consult with you and your physician to determine if a re-assignment of duties is necessary. The company will attempt to accommodate your needs by making any appropriate re-assignment. However, if a re-assignment is not possible, you will be placed on temporary medical leave until released as fit for duty by a prescribed physician.

87

4. *Grievance* - All aspects of this policy and program shall be subject to the grievance procedure contained in the applicable collective bargaining agreement.

## V. Drug/Alcohol Testing

The parties to this policy and program agree that under certain circumstances, the company will find it necessary to conduct drug and alcohol testing. While "random" testing is not necessary for the proper operations of this policy and program, it may be necessary to require testing under the following conditions:

a. A pre-employment drug and alcohol test may be administered to all applicants for employment. Employees recalled to work by an Employer, and employees referred to an Employer by the Union who are requested to be tested, shall be compensated at their regular hourly rate of pay for the time required in such testing;

b. A test may be administered in the event a supervisor has a reasonable cause to believe that the employee has reported to work under the influence, or is or has been under the influence while on the job; or has violated this drug policy. During the process of establishing reasonable cause for testing, the employee has the right to request his on-site representative to be present;

c. Testing may be required if an employee is involved in a workplace accident/incident or if there is a workplace injury;

d. Testing may be required as part of a follow-up to counseling or rehabilitation for substance abuse, for up to a one (1) year period.

Each employee will be required to sign a consent and chain of custody form, assuring proper documentation and accuracy. If an employee refuses to sign a consent form authorizing the test, ongoing employment by the company will be terminated.

Drug testing will be conducted by an independent accredited laboratory (National Institute on Drug Abuse

88

and/or College of American Pathology), and may consist of either blood or urine tests, or both as required. Blood tests will be utilized for post accident investigation only.

The company will bear the costs of all testing procedures.

## VI. Rehabilitation and Employee Assistance Program

Employees are encouraged to seek help for a drug or alcohol problem before it deteriorates into a disciplinary matter. If an employee voluntarily notifies supervision that he or she may have a substance abuse problem, the company will assist in locating a suitable employee assistance program for treatment, and will counsel the employee regarding medical benefits available under the company or union health and welfare/insurance program.

If treatment necessitates time away from work, the company shall provide for the employee an unpaid leave of absence for purposes of participation in an agreed upon treatment program. An employee who successfully completes a rehabilitation program shall be reinstated to his/her former employment status, if work for which he/she is qualified exists.

Employees returning to work after successfully completing the rehabilitation program will be subject to drug tests without prior notice for a period of one year. A positive test will then result in disciplinary action as previously outlined in this policy and program.

89

**Addendum to Agreement Between**
**Construction and General Laborers' District Council of Chicago and Vicinity**
**and**
**Chicago Area Independent Construction Association**

WHEREAS, the Construction and General Laborers' District Council of Chicago and Vicinity ("Union") and the Chicago Area Independent Construction Association ("CAICA"), on behalf of its member Employers, have entered into a collective bargaining agreement in effect from June 1, 2014 through May 31, 2017 for hours worked by Laborers ("Agreement");

WHEREAS, the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Welfare Fund") receives contributions from Employers bound to the Agreement for hours worked by Laborers thereunder;

WHEREAS, the Trustees of the Welfare Fund have recommended that the Fund's Retiree Plan of Benefits be established as a separate plan governed by separate Trust Agreement and Plan documents and be funded in part with an equitable allocation of the Welfare Plan's reserves;

WHEREAS, the Trustees of the Welfare Fund have agreed to serve as Trustees of the separate retiree plan to be known as the Chicago Laborers' District Council Retiree Health & Welfare Fund ("Retiree Welfare Fund") and have executed an appropriate Trust Agreement and adopted appropriate Plan documents;

WHEREAS, the Union has agreed to allocate increases in the contributions for welfare benefits effective June 1, 2014, that would provide for increases in the amounts applicable to retiree and active employee health benefits in the amounts listed in Exhibit A, attached hereto; and

WHEREAS, the Union and CAICA agree that contributions for welfare benefits for work performed on or after June 1, 2014, should be allocated and paid in the amounts set forth in Exhibit A to the Welfare Fund for active Employees and to the Retiree Welfare Fund for retirees;

NOW THEREFORE, the Union and CAICA agree as follows:

1. Effective June 1, 2014, all references in the Agreement to the Welfare Fund concerning contributions and other obligations are amended to include the Retiree Welfare Fund and to provide for the separate contributions set forth in Exhibit A to the Welfare Fund and Retiree Welfare Fund respectively, which amounts may be increased in future years at the discretion of the Union from the economic package.

2. CAICA, for and on behalf of the Employers it represents for bargaining purposes, agrees to be bound by the Agreement and Declaration of Trust establishing the Chicago Laborers' District Council Retiree Health & Welfare Fund effective June 1, 2014.

3. Effective June 1, 2014, any provisions concerning eligibility for appointment as a Welfare Fund Trustee shall apply to the Retiree Welfare Fund and the appointment of its Trustees.

4. The appointment of additional Employer Trustees to either the Welfare Fund or Retiree Welfare Fund shall be conditioned upon an Association meeting the appointing authority requirements of the Agreement and approval of the Union.

IN WITNESS WHEREOF, the Parties have caused this Addendum to be executed on the dates listed below and to be effective as of June 1, 2014.

CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL OF
CHICAGO AND VICINITY

CHICAGO AREA INDEPENDENT
CONSTRUCTION ASSOCIATION

By: _____

By: _____

By: _____

Date: 7/31/14

Date: 7/2/14

90

**EXHIBIT A**

| | |
|---|---|
| Current Hourly Contribution Rate | $13.38 |
| June 1, 2014 Hourly Increase | $ .40 |
| TOTAL: | $13.78 |

New Contribution Rates Effective June 1, 2014:

| | |
|---|---|
| Laborers Welfare Fund | $ 9.98 |
| Chicago Laborers' District Council Retiree Health and Welfare Fund | $ 3.80 |
| TOTAL: | $13.78 |

91

## CONTRACT EXTENSION AGREEMENT

The Construction and General Laborers' District Council of Chicago and Vicinity, for and on behalf of its affiliated Local Unions (collectively, "Laborers" or "Union") and the Chicago Area Independent Construction Association ("CAICA") hereby agree as follows:

1.     The Collective Bargaining Agreement between CAICA and the Laborers for the period June 1, 2010 through May 31, 2013 is extended for an additional four-year period, to and including May 31, 2017, with all dates therein revised to reflect this new term, and with the additional revisions set forth below.

2.     The hourly economic package for the new contract term will increase by 3.25% per annum in each of the four years of this Extension Agreement, as follows: $1.90 on June 1, 2013; $2.00 on June 1, 2014; $2.05 on June 1, 2015; and $2.10 on June 1, 2016.

3.     The Union agrees that it shall allocate sufficient funds to the pension fund of the Union (Westchester or Fox Valley) from the total economic package increases set forth above in each year of this Extension Agreement such that the pension fund remains in green status as defined by the Pension Protection Act of 2006, or any successor legislation.

4.     This Contract Extension Agreement is subject to ratification by the Union. After ratification, contractors who are signatory to the current Agreements through CAICA will have the opportunity to delegate bargaining rights to CAICA, thereby consenting to this extension for the period June 1, 2013-May 31, 2017 on an individual contractor basis. CAICA will provide the Union with lists of contractors consenting to this extension.

IN WITNESS WHEREOF, the parties have executed this Contract Extension Agreement this
11 day of January , 2013 .


CONSTRUCTION AND GENERAL
LABORERS'DISTRICT COUNCIL
OF CHICAGO AND VICINITY

By: _____
(James P. Connolly, Business Manager

By: _____
Charles V. LoVerde III, Secretary-Treasurer


CHICAGO AREA INDEPENDENT
CONSTRUCTION ASSOCIATION

By: _____
Scott B. Hasich

Its: _____
Chad Johnson

3/22/2017
PT

## LABORERS DISTRICT COUNCIL OF CHICAGO – CAICA
Eagle Painting and Maintenance #34265 ***REVISION***

YEAR: 6/12 to 5/13

**ADDITIONAL HOURS 6/12 to 5/13**

| S.S.# | Flags | Type | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apostolos, Callaros | 45.00 | Hours | - | - | - | - | 28.00 | 68.00 | 30.00 | 70.00 | 30.00 | 30.00 | 20.00 | 60.00 | 336.00 |
| | | Gross $ | $ - | $ - | $ - | $ - | $ - | $ 1,800.00 | $ - | 1,800.00 | | | | $ - | $ 1,800.00 | $ 5,400.00 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | | | | | 28.00 | 68.00 | 30.00 | 70.00 | 30.00 | 30.00 | 20.00 | 60.00 | 336.00 |
| TOTAL GROSS $ | $ - | $ - | $ - | $ - | $ - | $ 1,800.00 | $ - | 1,800.00 | $ - | $ - | $ - | $ 1,800.00 | $ 5,400.00 |

Amount Due To Funds:

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $ - | $ - | $ - | $ - | $ 357.84 | $ 869.04 | $ 383.40 | $ 894.60 | $ 383.40 | $ 383.40 | $ 255.60 | $ 766.80 | $ 4,294.08 |
| RET WEL | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PENSION | $ - | $ - | $ - | $ - | $ 252.56 | $ 613.36 | $ 270.60 | $ 631.40 | $ 270.60 | $ 270.60 | $ 180.40 | $ 541.20 | $ 3,030.72 |
| TRAINING | $ - | $ - | $ - | $ - | $ 14.00 | $ 34.00 | $ 15.00 | $ 35.00 | $ 15.00 | $ 15.00 | $ 10.00 | $ 30.00 | $ 168.00 |
| LECET | $ - | $ - | $ - | $ - | $ 1.96 | $ 4.76 | $ 2.10 | $ 4.90 | $ 2.10 | $ 2.10 | $ 1.40 | $ 4.20 | $ 23.52 |
| LMCC | $ - | $ - | $ - | $ - | $ 3.36 | $ 8.16 | $ 3.60 | $ 8.40 | $ 3.60 | $ 3.60 | $ 2.40 | $ 7.20 | $ 40.32 |
| CAICA | $ - | $ - | $ - | $ - | $ 2.24 | $ 5.44 | $ 2.40 | $ 5.60 | $ 2.40 | $ 2.40 | $ 1.60 | $ 4.80 | $ 26.88 |
| DUES | $ - | $ - | $ - | $ - | $ - | $ 58.50 | $ - | $ 58.50 | $ - | $ - | $ - | $ 58.50 | $ 175.50 |
| TOTAL | $ - | $ - | $ - | $ - | $ 631.96 | $ 1,593.26 | $ 677.10 | $ 1,638.40 | $ 677.10 | $ 677.10 | $ 451.40 | $ 1,412.70 | $ 7,759.02 |

| Rates: | 6/12 | to | 5/31/13 |
|---|---|---|---|
| WELFARE | 12.78 | LMCC | 0.12 |
| PENSION | 9.02 | CAICA | 0.08 |
| TRAINING | 0.50 | DUES | 3.25% |
| LECET | 0.07 | | |
| SCALE | 36.20 | | |


EXHIBIT B

3/22/2017
PT

**LABORERS DISTRICT COUNCIL OF CHICAGO – CAICA**

Eagle Painting and Maintenance #34265 ***REVISION***

YEAR: 6/13 to 5/14

ADDITIONAL HOURS 6/13 to 5/14

| S.S.# | Flags | Type | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apostolos, Callaros | 45.00 | Hours | 20.00 | 20.00 | 60.00 | 20.00 | 70.00 | 30.00 | 30.00 | 70.00 | 30.00 | 30.00 | 20.00 | 60.00 | 460.00 |
| | | Gross $ | - | - | 1,800.00 | - | 1,800.00 | - | - | 1,800.00 | - | - | - | 1,800.00 | $ 7,200.00 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | 20.00 | 20.00 | 60.00 | 20.00 | 70.00 | 30.00 | 30.00 | 70.00 | 30.00 | 30.00 | 20.00 | 60.00 | 460.00 |
| TOTAL GROSS $ | $ - | $ - | $ 1,800.00 | $ - | $ 1,800.00 | $ - | $ - | $ 1,800.00 | $ - | $ - | $ - | $1,800.00 | $ 7,200.00 |

| Amount Due To Funds: | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $ 267.60 | $ 267.60 | $ 802.80 | $ 267.60 | $ 936.60 | $ 401.40 | $ 401.40 | $ 936.60 | $ 401.40 | $ 401.40 | $ 267.60 | $ 802.80 | $ 6,154.80 |
| RET WEL | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| PENSION | $ 190.40 | $ 190.40 | $ 571.20 | $ 190.40 | $ 666.40 | $ 285.60 | $ 285.60 | $ 666.40 | $ 285.60 | $ 285.60 | $ 190.40 | $ 571.20 | $ 4,379.20 |
| TRAINING | $ 10.00 | $ 10.00 | $ 30.00 | $ 10.00 | $ 35.00 | $ 15.00 | $ 15.00 | $ 35.00 | $ 15.00 | $ 15.00 | $ 10.00 | $ 30.00 | $ 230.00 |
| LECET | $ 1.40 | $ 1.40 | $ 4.20 | $ 1.40 | $ 4.90 | $ 2.10 | $ 2.10 | $ 4.90 | $ 2.10 | $ 2.10 | $ 1.40 | $ 4.20 | $ 32.20 |
| LMCC | $ 2.40 | $ 2.40 | $ 7.20 | $ 2.40 | $ 8.40 | $ 3.60 | $ 3.60 | $ 8.40 | $ 3.60 | $ 3.60 | $ 2.40 | $ 7.20 | $ 55.20 |
| CAICA | $ 1.60 | $ 1.60 | $ 4.80 | $ 1.60 | $ 5.60 | $ 2.40 | $ 2.40 | $ 5.60 | $ 2.40 | $ 2.40 | $ 1.60 | $ 4.80 | $ 36.80 |
| DUES | $ - | $ - | $ 58.50 | $ - | $ 58.50 | $ - | $ - | $ 58.50 | $ - | $ - | $ - | $ 58.50 | $ 234.00 |
| TOTAL | $ 473.40 | $ 473.40 | $ 1,478.70 | $ 473.40 | $ 1,715.40 | $ 710.10 | $ 710.10 | $ 1,715.40 | $ 710.10 | $ 710.10 | $ 473.40 | $ 1,478.70 | $ 11,122.20 |

| Rates | 6/1/13 | to | 5/31/14 |
|---|---|---|---|
| WELFARE | 13.38 | LMCC | 0.12 |
| PENSION | 9.52 | CAICA | 0.08 |
| TRAINING | 0.50 | DUES | 3.25% |
| LECET | 0.07 | | |
| SCALE | 37.00 | | |

3/22/2017
PT

## LABORERS DISTRICT COUNCIL OF CHICAGO – CAICA

### Eagle Painting and Maintenance #34265 ***REVISION***

YEAR: 6/14 to 5/15

ADDITIONAL HOURS and/or WORK DUES 6/14 - 5/15

| S.S.# | Flags | Type | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apostolos, Callaros | 45.00 | Hours | 20.00 | 60.00 | 20.00 | 20.00 | 70.00 | 30.00 | 70.00 | 30.00 | 30.00 | 30.00 | 60.00 | 20.00 | 460.00 |
| | | Gross $ | - | 1,800.00 | - | - | 1,800.00 | - | 1,800.00 | - | - | - | 1,800.00 | - | 7,200.00 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | 20.00 | 60.00 | 20.00 | 20.00 | 70.00 | 30.00 | 70.00 | 30.00 | 30.00 | 30.00 | 60.00 | 20.00 | 460.00 |
| TOTAL GROSS $ | $ - | $1,800.00 | $ - | $ - | $1,800.00 | $ - | $1,800.00 | $ - | $ - | $ - | $1,800.00 | $ - | $7,200.00 |

Amount Due To Funds:

| Funds: | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $199.60 | $598.80 | $199.60 | $199.60 | $698.60 | $299.40 | $698.60 | $299.40 | $299.40 | $299.40 | $598.80 | $199.60 | $4,590.80 |
| RET WELL | $76.00 | $228.00 | $76.00 | $76.00 | $266.00 | $114.00 | $266.00 | $114.00 | $114.00 | $114.00 | $228.00 | $76.00 | $1,748.00 |
| PENSION | $202.40 | $607.20 | $202.40 | $202.40 | $708.40 | $303.60 | $708.40 | $303.60 | $303.60 | $303.60 | $607.20 | $202.40 | $4,655.20 |
| TRAINING | $10.00 | $30.00 | $10.00 | $10.00 | $35.00 | $15.00 | $35.00 | $15.00 | $15.00 | $15.00 | $30.00 | $10.00 | $230.00 |
| LECET | $1.40 | $4.20 | $1.40 | $1.40 | $4.90 | $2.10 | $4.90 | $2.10 | $2.10 | $2.10 | $4.20 | $1.40 | $32.20 |
| LMCC | $2.40 | $7.20 | $2.40 | $2.40 | $8.40 | $3.60 | $8.40 | $3.60 | $3.60 | $3.60 | $7.20 | $2.40 | $55.20 |
| CAICA | $1.60 | $4.80 | $1.60 | $1.60 | $5.60 | $2.40 | $5.60 | $2.40 | $2.40 | $2.40 | $4.80 | $1.60 | $36.80 |
| DUES | $ - | $58.50 | $ - | $ - | $58.50 | $ - | $58.50 | $ - | $ - | $ - | $58.50 | $ - | $234.00 |
| TOTAL | $493.40 | $1,538.70 | $493.40 | $493.40 | $1,785.40 | $740.10 | $1,785.40 | $740.10 | $740.10 | $740.10 | $1,538.70 | $493.40 | $11,582.20 |

| Rate: | 6/14 | | to | 5/01/15 |
|---|---|---|---|---|
| WELFARE | 9.98 | LECET | | 0.07 |
| RET WELL | 3.80 | LMCC | | 0.12 |
| PENSION | 10.12 | CAICA | | 0.08 |
| TRAINING | 0.50 | DUES | | 3.25% |
| SCALE | 38.00 | | | |

LABORERS DISTRICT COUNCIL OF CHICAGO – CAICA

Eagle Painting and Maintenance #34285 ***REVISION***

YEAR: 6/15 to 5/16

UNREPORTED HOURS and/or WORK DUES 6/15 - 5/16

| S.S.# | Flags | Type | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apostolos, Callaros | 45.00 | Hours | 20.00 | 60.00 | 20.00 | 30.00 | 70.00 | 30.00 | 70.00 | 30.00 | 30.00 | 70.00 | 30.00 | 30.00 | 490.00 |
| | | Gross $ | - | 1,800.00 | - | - | 1,800.00 | - | 1,800.00 | - | - | 1,800.00 | - | - | $ 7,200.00 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | 20.00 | 60.00 | 20.00 | 30.00 | 70.00 | 30.00 | 70.00 | 30.00 | 30.00 | 70.00 | 30.00 | 30.00 | 490.00 |
| TOTAL GROSS $ | $ - | $ 1,800.00 | $ - | $ - | $1,800.00 | $ - | $1,800.00 | $ - | $ - | $1,800.00 | $ - | $ - | $ 7,200.00 |

Amount Due To Funds:

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $199.60 | $598.80 | $199.60 | $299.40 | $698.60 | $299.40 | $698.60 | $299.40 | $299.40 | $698.60 | $299.40 | $299.40 | $4,890.20 |
| RET WEL | $80.00 | $240.00 | $80.00 | $120.00 | $280.00 | $120.00 | $280.00 | $120.00 | $120.00 | $280.00 | $120.00 | $120.00 | $1,960.00 |
| PENSION | $214.40 | $643.20 | $214.40 | $321.60 | $750.40 | $321.60 | $750.40 | $321.60 | $321.60 | $750.40 | $321.60 | $321.60 | $5,252.80 |
| TRAINING | $10.00 | $30.00 | $10.00 | $15.00 | $35.00 | $15.00 | $35.00 | $15.00 | $15.00 | $35.00 | $15.00 | $15.00 | $245.00 |
| LECET | $1.40 | $4.20 | $1.40 | $2.10 | $4.90 | $2.10 | $4.90 | $2.10 | $2.10 | $4.90 | $2.10 | $2.10 | $34.30 |
| LMCC | $3.40 | $10.20 | $3.40 | $5.10 | $11.90 | $5.10 | $11.90 | $5.10 | $5.10 | $11.90 | $5.10 | $5.10 | $83.30 |
| CAICA | $1.60 | $4.80 | $1.60 | $2.40 | $5.60 | $2.40 | $5.60 | $2.40 | $2.40 | $5.60 | $2.40 | $2.40 | $39.20 |
| DUES | $ - | $67.50 | $ - | $ - | $67.50 | $ - | $67.50 | $ - | $ - | $67.50 | $ - | $ - | $270.00 |
| TOTAL | $510.40 | $1,598.70 | $510.40 | $765.60 | $1,853.90 | $765.60 | $1,853.90 | $765.60 | $765.60 | $1,853.90 | $765.60 | $765.60 | $12,774.80 |

| Rates: | 6/1/15 | to | 6/3/16 |
|---|---|---|---|
| WELFARE | 9.98 | LECET | 0.07 |
| RET WEL | 4.00 | LMCC | 0.17 |
| PENSION | 10.72 | CAICA | 0.08 |
| TRAINING | 0.50 | DUES | 3.75% |
| SCALE | 39.20 | | |

3/22/2017
PT

Page 5 of 7

LABORERS DISTRICT COUNCIL OF CHICAGO – CAICA

Eagle Painting and Maintenance #34265 ***REVISION***

ADDITIONAL HOURS and/or WORK DUES  6/16 - 5/17

YEAR: 6/16 to 5/17

| S.S.# | Flags | Type | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apostolos, Callaros | | Hours | 70.00 | 60.00 | 30.00 | 70.00 | 30.00 | - | - | - | - | - | - | - | 260.00 |
| | | Gross $ | 1,800.00 | - | - | 1,800.00 | - | - | - | - | - | - | - | - | $ 3,600.00 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | 70.00 | 60.00 | 30.00 | 70.00 | 30.00 | - | - | - | - | - | - | - | 260.00 |
| TOTAL GROSS $ | $ 1,800.00 | $  - | $  - | $ 1,800.00 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 3,600.00 |

Amount Due To Funds:

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $ 698.60 | $ 598.80 | $ 299.40 | $ 698.60 | $ 299.40 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 2,594.80 |
| RET WEL | $ 297.50 | $ 255.00 | $ 127.50 | $ 297.50 | $ 127.50 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 1,105.00 |
| PENSION | $ 809.90 | $ 694.20 | $ 347.10 | $ 809.90 | $ 347.10 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 3,008.20 |
| TRAINING | $ 35.00 | $ 30.00 | $ 15.00 | $ 35.00 | $ 15.00 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 130.00 |
| LECET | $ 4.90 | $ 4.20 | $ 2.10 | $ 4.90 | $ 2.10 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 18.20 |
| LMCC | $ 11.90 | $ 10.20 | $ 5.10 | $ 11.90 | $ 5.10 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 44.20 |
| CAICA | $ 5.60 | $ 4.80 | $ 2.40 | $ 5.60 | $ 2.40 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 20.80 |
| DUES | $ 67.50 | $  - | $  - | $ 67.50 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 135.00 |
| TOTAL | $ 1,930.90 | $ 1,597.20 | $ 798.60 | $ 1,930.90 | $ 798.60 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 7,056.20 |

| Rates: | 6/1/16 | to | 5/1/17 |
|---|---|---|---|
| WELFARE | 9.98 | LECET | 0.07 |
| RET WELL | 4.25 | LMCC | 0.17 |
| PENSION | 11.57 | CAICA | 0.08 |
| TRAINING | 0.50 | DUES | 3.75% |
| SCALE | 40.20 | | |

3/22/2017
PT

# LABORERS DISTRICT COUNCIL OF CHICAGO – CAICA

Eagle Painting and Maintenance #34265 ***REVISION***

RICHARD J. WOLF AND COMPANY, INC.

## SUMMARY REPORT TOTAL

|  | ADDITIONAL | UNREPORTED | TOTAL |
|---|---|---|---|
| WELFARE | $ 22,524.68 | $ - | $22,524.68 |
| RET WEL | $ 4,813.00 | $ - | $ 4,813.00 |
| PENSION | $ 20,326.12 | $ - | $20,326.12 |
| TRAINING | $ 1,003.00 | $ - | $ 1,003.00 |
| LECET | $ 140.42 | $ - | $ 140.42 |
| LMCC | $ 278.22 | $ - | $ 278.22 |
| CAICA | $ 160.48 | $ - | $ 160.48 |
| DUES | $ 1,048.50 | $ - | $ 1,048.50 |
| TOTAL | $ 50,294.42 | $ - | $50,294.42 |

LABORERS DISTRICT COUNCIL OF CHICAGO – CAICA

Eagle Painting and Maintenance #34265 ***REVISION***

RICHARD J. WOLF AND COMPANY, INC.

** *GRAND TOTAL* **

| | | |
|---|---|---|
| WELFARE | $ | 22,524.68 |
| RET WEL | $ | 4,813.00 |
| PENSION | $ | 20,326.12 |
| TRAINING | $ | 1,003.00 |
| LECET | $ | 140.42 |
| LMCC | $ | 278.22 |
| CAICA | $ | 160.48 |
| DUES | $ | 1,048.50 |
| TOTAL | $ | 50,294.42 |

## LABORERS' DISTRICT COUNCIL
### RECONCILIATION OF DIFFERENCES TOTALS PER FISCAL YEAR

| Fiscal Year Ending | 5/31/13 | 5/31/14 | 5/31/15 | 5/31/16 | 5/3/17 | Total Due |
|---|---|---|---|---|---|---|
| Fringe Hours Not Reported | 336.00 | 460.00 | 460.00 | 490.00 | 260.00 | 2,006.00 |
| Dues Hours Not Reported | 336.00 | 460.00 | 460.00 | 490.00 | 260.00 | 2,006.00 |
| Dues Wages Not Reported | 5,400.00 | 7,200.00 | 7,200.00 | 7,200.00 | 3,600.00 | 30,600.00 |
| Dollar Amount Due | | | | | | |
| Welfare (Active) | 4,294.08 | 6,154.80 | 4,590.80 | 4,890.20 | 2,594.80 | 22,524.68 |
| Welfare (Retiree) | - | - | 1,748.00 | 1,960.00 | 1,105.00 | 4,813.00 |
| Pension | 3,030.72 | 4,379.20 | 4,655.20 | 5,252.80 | 3,008.20 | 20,326.12 |
| Training | 168.00 | 230.00 | 230.00 | 245.00 | 130.00 | 1,003.00 |
| LECET | 23.52 | 32.20 | 32.20 | 34.30 | 18.20 | 140.42 |
| LMCC | 40.32 | 55.20 | 55.20 | 83.30 | 44.20 | 278.22 |
| CAICA | 26.88 | 36.80 | 36.80 | 39.20 | 20.80 | 160.48 |
| Working Dues | 175.50 | 234.00 | 234.00 | 270.00 | 135.00 | 1,048.50 |
| Totals | 7,759.02 | 11,122.20 | 11,582.20 | 12,774.80 | 7,056.20 | 50,294.42 |

Plus previous late charges assessed by Laborers' Pension and Welfare Funds

Plus previous underpayments incurred to Laborers' District Council Funds

Plus previous penalties incurred to Laborers's District Council Funds

Audit Fee (revision)

Total Amount Due | 50,294.42

Employer Name: Eagle Ptg. and Maint. #34265 ***REVISION**
Employer Number: 34265
Date of Audit: 11/30/2016
Audit Period: 10/1/12 - 10/31/16

Contact Person: Margaret Hennessy
Telephone: 708-862-8712  Fax 708-862-8718
Auditor: Patrice Traina
Association: CAICA

# LABORERS' DISTRICT COUNCIL
## RECONCILIATION OF DIFFERENCES PER YEAR

| Fiscal Year by Month | 6/1/12 | 7/1/12 | 8/1/12 | 9/1/12 | 10/1/12 | 11/1/12 | 12/1/12 | 1/1/13 | 2/1/13 | 3/1/13 | 4/1/13 | 5/1/13 | Total Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fringe Hours Not Reported | - | - | - | - | 28.00 | 68.00 | 30.00 | 70.00 | 30.00 | 30.00 | 20.00 | 60.00 | 336.00 |
| Dues Hours Not Reported | - | - | - | - | 28.00 | 68.00 | 30.00 | 70.00 | 30.00 | 30.00 | 20.00 | 60.00 | 336.00 |
| Dues Wages Not Reported | - | - | - | - | 1,800.00 | 1,800.00 | - | 1,800.00 | - | - | - | 1,800.00 | 5,400.00 |
| | | | | | | | | | | | | | |
| Dollar Amount Due | | | | | | | | | | | | | |
| Welfare (Active) | - | - | - | - | 357.84 | 869.04 | 383.40 | 894.60 | 383.40 | 383.40 | 255.60 | 766.80 | 4,294.08 |
| Welfare (Retiree) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Pension | - | - | - | - | 252.56 | 613.36 | 270.60 | 631.40 | 270.60 | 270.60 | 180.40 | 541.20 | 3,030.72 |
| Training | - | - | - | - | 14.00 | 34.00 | 15.00 | 35.00 | 15.00 | 15.00 | 10.00 | 30.00 | 168.00 |
| LECET | - | - | - | - | 1.96 | 4.76 | 2.10 | 4.90 | 2.10 | 2.10 | 1.40 | 4.20 | 23.52 |
| LMCC | - | - | - | - | 3.36 | 8.16 | 3.60 | 8.40 | 3.60 | 3.60 | 2.40 | 7.20 | 40.32 |
| CAICA | - | - | - | - | 2.24 | 5.44 | 2.40 | 5.60 | 2.40 | 2.40 | 1.60 | 4.80 | 26.88 |
| DUES | - | - | - | - | - | 58.50 | - | 58.50 | - | - | - | 58.50 | 175.50 |
| Totals | - | - | - | - | 631.96 | 1,593.26 | 677.10 | 1,638.40 | 677.10 | 677.10 | 451.40 | 1,412.70 | 7,759.02 |

| | |
|---|---|
| Plus previous late charges assessed by Laborers' Pension and Welfare Funds | |
| Plus previous underpayments incurred to Laborers' District Council Funds | |
| Plus previous penalties incurred to Laborers's District Council Funds | |
| Audit Fee | |
| Total Amount Due | 7,759.02 |

Employer Name: Eagle Pkg. and Maint. #3426S ***REVISION***
Employer Number: 3426S
Date of Audit: 11/30/2016
Audit Period: 10/1/12 - 10/31/16

Contact Person: Margaret Hennessy
Telephone: 708-862-8712 Fax:708-862-8718
Auditor: Patrice Traina
Association: CAICA

## LABORERS' DISTRICL COUNCIL
### RECONCILIATION OF DIFFERENCES PER YEAR

| Fiscal Year by Month | 6/1/13 | 7/1/13 | 8/1/13 | 9/1/13 | 10/1/13 | 11/1/13 | 12/1/13 | 1/1/14 | 2/1/14 | 3/1/14 | 4/1/14 | 5/1/14 | Total Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fringe Hours Not Reported | 20.00 | 20.00 | 60.00 | 20.00 | 70.00 | 30.00 | 30.00 | 70.00 | 30.00 | 30.00 | 20.00 | 60.00 | 460.00 |
| Dues Hours Not Reported | 20.00 | 20.00 | 60.00 | 20.00 | 70.00 | 30.00 | 30.00 | 70.00 | 30.00 | 30.00 | 20.00 | 60.00 | 460.00 |
| Dues Wages Not Reported | - | - | 1,800.00 | - | 1,800.00 | - | - | 1,800.00 | - | - | - | 1,800.00 | 7,200.00 |
| | | | | | | | | | | | | | |
| **Dollar Amount Due** | | | | | | | | | | | | | |
| Welfare (Active) | 267.60 | 267.60 | 802.80 | 267.60 | 936.60 | 401.40 | 401.40 | 936.60 | 401.40 | 401.40 | 267.60 | 802.80 | 6,154.80 |
| Welfare (Retiree) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Pension | 190.40 | 190.40 | 571.20 | 190.40 | 666.40 | 285.60 | 285.60 | 666.40 | 285.60 | 285.60 | 190.40 | 571.20 | 4,379.20 |
| Training | 10.00 | 10.00 | 30.00 | 10.00 | 35.00 | 15.00 | 15.00 | 35.00 | 15.00 | 15.00 | 10.00 | 30.00 | 230.00 |
| LECCET | 1.40 | 1.40 | 4.20 | 1.40 | 4.90 | 2.10 | 2.10 | 4.90 | 2.10 | 2.10 | 1.40 | 4.20 | 32.20 |
| LMCC | 2.40 | 2.40 | 7.20 | 2.40 | 8.40 | 3.60 | 3.60 | 8.40 | 3.60 | 3.60 | 2.40 | 7.20 | 55.20 |
| CAICA | 1.60 | 1.60 | 4.80 | 1.60 | 5.60 | 2.40 | 2.40 | 5.60 | 2.40 | 2.40 | 1.60 | 4.80 | 36.80 |
| DUES | - | - | 58.50 | - | 58.50 | - | - | 58.50 | - | - | - | 58.50 | 234.00 |
| Totals | 473.40 | 473.40 | 1,478.70 | 473.40 | 1,715.40 | 710.10 | 710.10 | 1,715.40 | 710.10 | 710.10 | 473.40 | 1,478.70 | 11,122.20 |

| | | Total Due |
|---|---|---|
| Plus previous late charges assessed by Laborers' Pension and Welfare Funds | | - |
| Plus previous underpayments incurred to Laborers' District Council Funds | | - |
| Plus previous underpayments incurred to Laborers' District Council Funds | | - |
| Plus previous penalties incurred to Laborers's District Council Funds | | - |
| Audit Fee | | |
| Total Amount Due | | 11,122.20 |

Employer Name: Eagle Ptg. and Maint. #34255 ****REVISION****
Employer Number: 34255
Date of Audit: 11/30/2015
Audit Period: 10/1/12 - 10/31/15

Contact Person: Margaret Hennessy
Telephone: 708-862-8712 Fax 708-862-8718
Auditor: Patrice Traina
Association: CAICA

## LABORERS' DISTRICL COUNCIL
### RECONCILIATION OF DIFFERENCES PER YEAR

| Fiscal Year by Month | 6/1/14 | 7/1/14 | 8/1/14 | 9/1/14 | 10/1/14 | 11/1/14 | 12/1/14 | 1/1/15 | 2/1/15 | 3/1/15 | 4/1/15 | 5/1/15 | Total Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fringe Hours Not Reported | 20.00 | 60.00 | 20.00 | 20.00 | 70.00 | 30.00 | 70.00 | 30.00 | 30.00 | 30.00 | 60.00 | 20.00 | 460.00 |
| Dues Hours Not Reported | 20.00 | 60.00 | 20.00 | 20.00 | 70.00 | 30.00 | 70.00 | 30.00 | 30.00 | 30.00 | 60.00 | 20.00 | 460.00 |
| Dues Wages Not Reported | - | 1,800.00 | - | - | 1,800.00 | - | 1,800.00 | - | - | - | 1,800.00 | - | 7,200.00 |
| | | | | | | | | | | | | | |
| Dollar Amount Due | | | | | | | | | | | | | |
| Welfare (Active) | 199.60 | 598.80 | 199.60 | 199.60 | 698.60 | 299.40 | 698.60 | 299.40 | 299.40 | 299.40 | 598.80 | 199.60 | 4,590.80 |
| Welfare (Retiree) | 76.00 | 228.00 | 76.00 | 76.00 | 266.00 | 114.00 | 266.00 | 114.00 | 114.00 | 114.00 | 228.00 | 76.00 | 1,748.00 |
| Pension | 202.40 | 607.20 | 202.40 | 202.40 | 708.40 | 303.60 | 708.40 | 303.60 | 303.60 | 303.60 | 607.20 | 202.40 | 4,655.20 |
| Training | 10.00 | 30.00 | 10.00 | 10.00 | 35.00 | 15.00 | 35.00 | 15.00 | 15.00 | 15.00 | 30.00 | 10.00 | 230.00 |
| LECET | 1.40 | 4.20 | 1.40 | 1.40 | 4.90 | 2.10 | 4.90 | 2.10 | 2.10 | 2.10 | 4.20 | 1.40 | 32.20 |
| LMCC | 2.40 | 7.20 | 2.40 | 2.40 | 8.40 | 3.60 | 8.40 | 3.60 | 3.60 | 3.60 | 7.20 | 2.40 | 55.20 |
| CAICA | 1.60 | 4.80 | 1.60 | 1.60 | 5.60 | 2.40 | 5.60 | 2.40 | 2.40 | 2.40 | 4.80 | 1.60 | 36.80 |
| DUES | - | 58.50 | - | - | 58.50 | - | 58.50 | - | - | - | 58.50 | - | 234.00 |
| Totals | 493.40 | 1,538.70 | 493.40 | 493.40 | 1,785.40 | 740.10 | 1,785.40 | 740.10 | 740.10 | 740.10 | 1,538.70 | 493.40 | 11,582.20 |

| | | Total Due |
|---|---|---|
| Plus previous late charges assessed by Laborers' Pension and Welfare Funds | | - |
| Plus previous underpayments incurred to Laborers' District Council Funds | | - |
| Plus previous penalties incurred to Laborers' District Council Funds | | - |
| Audit Fee | | - |
| Total Amount Due | | 11,582.20 |

| | | |
|---|---|---|
| Employer Name: | Eagle Ptg. and Maint. 1534265 ****REVISION**** | Contact Person: Margaret Hennessy |
| Employer Number: | 34265 | Telephone: 708-862-8712 Fax 708-862-6718 |
| Date of Audit: | 11/30/2016 | Auditor: Patrice Traina |
| Audit Period: | 10/1/12 - 10/31/16 | Association: CAICA |

## LABORERS' DISTRICT COUNCIL
### RECONCILIATION OF DIFFERENCES PER YEAR

| Fiscal Year by Month | 6/1/15 | 7/1/15 | 8/1/15 | 9/1/15 | 10/1/15 | 11/1/15 | 12/1/15 | 1/1/16 | 2/1/16 | 3/1/16 | 4/1/16 | 5/1/16 | Total Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fringe Hours Not Reported | 20.00 | 60.00 | 20.00 | 30.00 | 70.00 | 30.00 | 70.00 | 30.00 | 30.00 | 70.00 | 30.00 | 30.00 | 490.00 |
| Dues Hours Not Reported | 20.00 | 60.00 | 20.00 | 30.00 | 70.00 | 30.00 | 70.00 | 30.00 | 30.00 | 70.00 | 30.00 | 30.00 | 490.00 |
| Dues Wages Not Reported | - | 1,800.00 | - | - | 1,800.00 | - | 1,800.00 | - | - | 1,800.00 | - | - | 7,200.00 |

| Dollar Amount Due | 6/1/15 | 7/1/15 | 8/1/15 | 9/1/15 | 10/1/15 | 11/1/15 | 12/1/15 | 1/1/16 | 2/1/16 | 3/1/16 | 4/1/16 | 5/1/16 | Total Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare (Active) | 159.60 | 598.80 | 159.60 | 299.40 | 698.60 | 299.40 | 698.60 | 299.40 | 299.40 | 698.60 | 299.40 | 299.40 | 4,890.20 |
| Welfare (Retiree) | 80.00 | 240.00 | 80.00 | 120.00 | 280.00 | 120.00 | 280.00 | 120.00 | 120.00 | 280.00 | 120.00 | 120.00 | 1,960.00 |
| Pension | 214.40 | 643.20 | 214.40 | 321.60 | 750.40 | 321.60 | 750.40 | 321.60 | 321.60 | 750.40 | 321.60 | 321.60 | 5,252.80 |
| Training | 10.00 | 30.00 | 10.00 | 15.00 | 35.00 | 15.00 | 35.00 | 15.00 | 15.00 | 35.00 | 15.00 | 15.00 | 245.00 |
| LECET | 1.40 | 4.20 | 1.40 | 2.10 | 4.90 | 2.10 | 4.90 | 2.10 | 2.10 | 4.90 | 2.10 | 2.10 | 34.30 |
| LMCC | 3.40 | 10.20 | 3.40 | 5.10 | 11.90 | 5.10 | 11.90 | 5.10 | 5.10 | 11.90 | 5.10 | 5.10 | 83.30 |
| CAICA | 1.60 | 4.80 | 1.60 | 2.40 | 5.60 | 2.40 | 5.60 | 2.40 | 2.40 | 5.60 | 2.40 | 2.40 | 39.20 |
| DUES | - | 67.50 | - | - | 67.50 | - | 67.50 | - | - | 67.50 | - | - | 270.00 |
| Totals | 510.40 | 1,598.70 | 510.40 | 765.60 | 1,853.90 | 765.60 | 1,853.90 | 765.60 | 765.60 | 1,853.90 | 765.60 | 765.60 | 12,774.80 |

| | |
|---|---|
| Plus previous late charges assessed by Laborers' Pension and Welfare Funds | - |
| Plus previous underpayments incurred to Laborers' District Council Funds | - |
| Plus previous penalties incurred to Laborer's District Council Funds | - |
| Audit Fee | - |
| Total Amount Due | 12,774.80 |

| | | | |
|---|---|---|---|
| Employer Name: | Eagle Ptg. and Maint. #34265 ***REVISION*** | Contact Person: | Margaret Hennessy |
| Employer Number: | 34265 | Telephone: | 708-862-8712 Fax 708-862-8718 |
| Date of Audit: | 11/30/2016 | Auditor: | Patrice Traina |
| Audit Period: | 10/1/12 - 10/31/16 | Association: | CAICA |

## LABORERS' DISTRICL COUNCIL
### RECONCILIATION OF DIFFERENCES PER YEAR

| Fiscal Year by Month | 6/1/16 | 7/1/16 | 8/1/16 | 9/1/16 | 10/1/16 | 11/1/16 | 12/1/16 | 1/1/17 | 2/1/17 | 3/1/17 | 4/1/17 | 5/1/17 | Total Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fringe Hours Not Reported | 70.00 | 60.00 | 30.00 | 70.00 | 30.00 | - | - | - | - | - | - | - | 260.00 |
| Dues Hours Not Reported | 70.00 | 60.00 | 30.00 | 70.00 | 30.00 | - | - | - | - | - | - | - | 260.00 |
| Dues Wages Not Reported | 1,800.00 | - | - | 1,800.00 | - | - | - | - | - | - | - | - | 3,600.00 |
| | | | | | | | | | | | | | |
| Dollar Amount Due | | | | | | | | | | | | | |
| Welfare (Active) | 698.60 | 598.80 | 299.40 | 698.60 | 299.40 | - | - | - | - | - | - | - | 2,594.80 |
| Welfare (Retiree) | 297.50 | 255.00 | 127.50 | 297.50 | 127.50 | - | - | - | - | - | - | - | 1,105.00 |
| Pension | 809.90 | 694.20 | 347.10 | 809.90 | 347.10 | - | - | - | - | - | - | - | 3,008.20 |
| Training | 35.00 | 30.00 | 15.00 | 35.00 | 15.00 | - | - | - | - | - | - | - | 130.00 |
| LECCET | 4.90 | 4.20 | 2.10 | 4.90 | 2.10 | - | - | - | - | - | - | - | 18.20 |
| LMCC | 11.90 | 10.20 | 5.10 | 11.90 | 5.10 | - | - | - | - | - | - | - | 44.20 |
| CAICA | 5.60 | 4.80 | 2.40 | 5.60 | 2.40 | - | - | - | - | - | - | - | 20.80 |
| DUES | 67.50 | - | - | 67.50 | - | - | - | - | - | - | - | - | 135.00 |
| Totals | 1,930.90 | 1,597.20 | 798.60 | 1,930.90 | 798.60 | - | - | - | - | - | - | - | 7,056.20 |

| | |
|---|---|
| Plus previous late charges assessed by Laborers' Pension and Welfare Funds | - |
| Plus previous underpayments incurred to Laborers' District Council Funds | - |
| Plus previous penalties incurred to Laborers' District Council Funds | - |
| Audit Fee (revision) | |

Total Amount Due | 7,056.20

| | | | |
|---|---|---|---|
| Employer Name: | Eagle Painting and Maintenance #34265 | Contact Person: | Margaret Hennessy |
| Employer Number: | 34265 | Telephone: | 708-862-8712  Fax 708-862-8718 |
| Date of Audit: | 11/30/2016 | Auditor: | Patrice Traina |
| Audit Period: | 10/1/15 - 10/31/16 | Association: | CAICA |